John Diffenderffer *vs.* Winder, *et ux.*—*December*, 1831.

D, in 1815, voluntarily assumed a trust over certain real property, to a part of the rents of which the complainants were entitled, and from that period until 1828, from time to time, every year, received large sums of money from the estate, which he continually employed in trade and speculation.   To the bill against him for an account, he filed more than one defective answer, withholding the discovery sought for.   He claimed the whole trust fund, in one answer, as belonging to his wife and children, who really owned a part ; while in another, he set up an unfounded stale claim in a stranger, to a part of the fund.   He endeavored in the progress of the cause to stifle the inquiry as to the use he had made of the money received, or the profits which had accrued from its use.   He neither paid nor offered to pay the *c. q. t.* complainants any thing.   HELD, that under the circumstances he was liable to pay compound interest, estimation on the balance in his hands at the end of each year; and that having kept full and fair accounts of his receipts and expenditures, and in that respect faithfully discharged his duty as trustee, he had not forfeited all claim to commissions, but was entitled to half commission— 5 per centum.

Where the Appellate Court reverses the decree of the Court of Chancery, it exercises as it were an original equity jurisdiction, and places that decree upon the record, which the Chancellor ought to have given.   Upon cross appeals, therefore, from the same decree, errors of which one party below, since the Act of 1825, could not have availed himself upon his appeal, because not excepted to, may be corrected by this court in remodelling the Chancellor's decree upon the appeal of the other party.

The Court of Appeals will direct an audit to be made, and new accounts stated, where it is necessary to enable them to pass a final decree in the cause.

Accounts stated by the auditor of the Court of Chancery which have not been confirmed by the Chancellor, are no evidence of the truth of the facts assumed by the auditor in stating them.

Where trustees act *bona fide* and with due diligence, they have always received the favor and protection of Courts of Equity, and their acts are regarded with the most indulgent consideration. Where they have betrayed their trust —grossly violated their duty, or been guilty of unreasonable negligence, their acts are inspected with the severest scrutiny, and they are dealt with according to rules of strict, if not of rigorous justice.

*Cross appeals* from the Court of Chancery.

On the 8th August, 1825, the appellees, *William S. Winder*, and *Araminta* his wife, filed the present bill against the appellant, and *Amelia, Michael,* and *Charles R. Diffenderffer*, the minor children of the appellant, charging, that in the year 1805, a certain *Charles Rogers* being seised of a considerable real estate in the city and county of *Baltimore*, duly made his last will and testament, and without revoking the same, departed this life at the close of the said year, leaving four children, to wit, *Ann Martin, Mary Lee, Catharine Rogers,* and *Sarah Bailey,* the mother of the complainant, *Araminta*. That the testator devised his estate to certain trustees, to hold the same upon the trusts by the will disclosed, and also devised all his real estate fronting on *Baltimore* and *Calvert* streets, except forty feet at the north, to be divided into three equal parts by the trustees, and to be by them held, to, and for, the sole and separate use of the testator's three youngest daughters, *Ann, Mary,* and *Catharine,* during their natural lives, as tenants in common, free from the control of their then, or future husbands, and after their death, then in trust for the children of such daughters as tenants in common, and by said will made the following devise. " The residue of my real estate situate in the city of *Baltimore,* or elsewhere, it is my will and desire, that my said trustees, and the heirs of the survivor of them, hold the same in trust to and for the sole and separate use and behoof of my said three youngest daughters, *Ann, Mary* and *Catharine,* as tenants in common, without the control or interference of any future

or present husband, each to receive the rents and profits of the same, and to give receipts, either to the tenants, or my trustees, and from and immediately after the decease of each of my said three daughters, then in trust, to and for all and every of the child and children of said daughters, their heirs and assigns, as tenants in common, such child or children to have the share of its, or their parent; to wit, the one-third part of said last mentioned premises, leaving the two-thirds to my surviving daughters, and in case of the death of two of them, then leaving the one-third to the survivor; the remaining two-thirds vesting in the issue of my deceased daughters, *per stirpes;*" and further devised, "If any of my children, to wit, *Sarah Bailey, Ann Martin, Mary Lee,* or *Catharine Rogers,* die without leaving issue at the time of their death, or if leaving issue, they die without issue before they arrive at the age of 21 years; it is my will that my trustees, and the survivor of them, &c. hold his, her, or their share or shares, if more than one, in trust, to and for all my surviving daughter or daughters; and the issue of any daughter, is to be considered as a surviving daughter, and to represent the mother or parent *per stirpes;* where any limitation in this will is made to children or daughters, my meaning is, that the same comprise their issue, that is, my grand, great grand-children, and so *in infinitum;* and they are to take *per stirpes,* to wit, issue, to take any one of my daughter's share, it being my intention that no one part, or share of my property, on the death of any of my daughters, shall go to the surviving sister, as long as children, or issue shall represent any of my deceased daughters," as by reference to the will exhibited with the bill appears. That the said *Ann Martin* and *Mary Lee,* have departed this life, without leaving any children or issue whatever. That the said *Sarah Bailey* hath departed this life, leaving the complainant *Araminta,* since married to the other complainant, her only child and heir at law. That *Catharine Rogers* married *John Diffenderffer,* (the appellant) by whom she had four children, one of whom died unmarried, and

without issue, and *Amelia*, *Michael*, and *Charles R.* three of the defendants are her surviving children, all of whom are minors, and that *Catharine*, the mother is dead. That since the death of the said *Ann Martin* and *Mary Lee*, the said *John Diffenderffer* asserting that his children are entitled to the whole of the property mentioned in the several devises, hereinbefore stated, has taken possession of all such property, rented out the same, and received the rents and profits thereof, to a large amount, to the exclusion of the complainant, *Araminta*, who as the complainants charge, is entitled to one-half of the shares belonging to the said *Ann Martin* and *Mary Lee*, the children of said *Diffenderffer* being entitled to the other half. The bill further stated, that the trustees named in the will have refused to accept the trust, and none others have been appointed by any competent authority. That frequent applications have been made to *Diffenderffer* for an account of the moneys received by him, and a discovery of the property to which *Ann Martin* and *Mary Lee* were entitled under the aforesaid will, and where the same is situated; and for a fair and equal division thereof, which has been refused. The bill sought information on all these subjects; and *prayed* that *Diffenderffer* may come to a full and fair account for the rents and profits of said property, and for a division of the same, and for further relief.

The answer of the appellant admitted the death of *Charles Rogers*, the testator, as stated in the bill, and that complainants exhibited a true copy of his will. That he left four children as stated, and that *Catharine Bailey*, one of them is dead, leaving the complainant, *Araminta*, her only child, and heir at law. The marriage of the complainant is also admitted; and that *Ann Martin* and *Mary Lee* have departed this life without issue; the former on the 5th of May, 1807, the latter on the 21st of January, 1808. That *Catharine Rogers* intermarried with the respondent, and that she has since died, to wit, on the 30th June, 1818, leaving four children, one of whom thereafter died, as

charged in the bill. The answer then states, that the trustees refused to accept the trust as stated, in consequence whereof, an application was made on behalf of the parties interested, to have a trustee appointed to execute the trusts of the will; that thereupon one *Samuel Vincent* was appointed by the Chancellor some time about the year 1806, for that purpose, who took upon himself the duties of said appointment, and continued to discharge them up to the year 1815, when from the infirmities of age and disease, he became incapable of executing them further. That *Vincent* from time to time, settled his accounts in the Court of Chancery, and paid over to this defendant sundry sums of money received from the said trust fund, on account of the distributive share of his wife; by which, and by an account stated by the auditor of the Court of Chancery, it will appear, that there remained a large balance due to his said wife, whilst the other parties received more than their proportions. The answer further states, that when said *Vincent* became incapable as before mentioned, from further fulfilling the duties of trustee, he required this defendant to take possession, and receive the rents and profits of that part of said trust estate, which belonged to his wife, and descended to her children as aforesaid. That the defendant accordingly took possession of the property on *Calvert* and *Baltimore* streets, devised as aforesaid in trust, for the benefit of the said *Ann Martin* and *Mary Lee*, and the said *Catharine Rogers*, (married to defendant) and also of sundry ground rents, devised in the same way, which he is advised he had a just and legal right to, by virtue of the aforesaid will, and the death of *Ann Martin* and *Mary Lee*, upon which the said estate, so taken possession of by him, descended to the said *Catharine*, and after her death, to her aforesaid children. That from the 16th of January, 1815, to the 28th of November, 1825, he hath received, deducting sundry disbursements, for taxes, repairs, &c. the sum of $24,149 35½ of which he hath a particular account, ready to be produced when necessary, in the future pro-

gress of the cause. That he did not take possession of, or receive the rents and profits, of any other of the estate of the said testator, than as stated above, &c.

Upon exceptions to the above, an amended answer was filed, exhibiting a particular account of the receipts of, and expenditures by, the defendant, on account of said estate.

The infant defendants answered by their guardian, denying all knowledge of the facts stated in the bill, and putting complainants to the proof of the same.

Afterwards by consent of parties, the defendant, *John Diffenderffer*, at March term, 1828, filed an amended answer, exhibiting a deed executed by *Ann Martin*, and *Alexander Martin*, her husband, dated the 8th of October, 1806, to a certain *Levin P. Barnes;* and a deed from the said *Barnes*, dated on the first day of April, then following, to a certain *William Hickborn*, whereby as he alleged the entail of the estate was docked, and the said *Hickborn* became, and was seized of an absolute estate therein in fee simple, in trust, for the sole, and separate use of the said *Ann Martin;* and also the last will and testament of the said *Ann*, duly executed, devising to certain persons therein named, the whole of her interest and estate in the said premises, to the exclusion of the complainants, or either of them.

A commission issued to take testimony, and interrogatories, were filed by the complainants, to be propounded to the defendant *John Diffenderffer*. In reply to these he stated—that the accounts heretofore filed by him in Chancery, will show the amount, and how, when, and from whom, he received the rents and proceeds of the estate of *Charles Rogers*, of which he was appointed trustee by the Chancellor, he has been at all times ready, and willing to account for, and pay over the balance which may be due, upon the said trust. He has at different times during the said trust made purchases of stock in various public institutions, by many of which he has lost large sums of money. He kept a separate, and distinct account of the

rents received from said estate in his own books, though he did not make a separate deposite of them in bank, which could not be done, as the greater proportion of them was received in small sums, of ten, twenty, fifty, or one hundred dollars, and occasionally larger sums; that the moneys so received were deposited with his own in bank, and drawn for in the same way; and that he had at all times, a large cash balance in his favor in bank, for which he received no interest; and that he could, and would at all times have paid on demand, any thing due to said trust estate. All accounts made out by him, against the debtors of the estate, were in the name of the heirs of *Charles Rogers*, expecting to account with, and pay over to them the rents so received. The respondent had been advised, and believed, that the property belonged exclusively to his own children.

BLAND, Chancellor, (March term, 1828.)

After an attentive consideration of the will of the late *Charles Rogers*, upon the true construction of which, this controversy entirely rests, it is my opinion that he devised the property mentioned in the complainant's bill, to his daughters for life, with remainder to their children in fee simple, and upon the death of any one daughter without children, then her share was to go to the survivors, and their children. There is nothing in this will, which shows it to have been the intention of the testator, that his daughters, or their issue, should take an estate tail only. All four of his daughters are now dead, and two of them, *Ann* and *Mary*, have left no issue, consequently the property in the proceedings mentioned, must pass in two equal parts to the testator's grand children, the one-half part to the complainant, *Araminta*, as the daughter and sole heir of the late *Sarah*, and the other half part, to be equally divided, among *Amelia*, *Michael*, and *Charles R. Diffenderffer*, as the children and heirs of the late *Catharine*. The bill prays for a partition of the estate, and for an account of the rents and profits; these prayers will be granted. It was thereupon,

(April 7th, 1828,) adjudged, that a commission issue to make partition accordingly, and the defendant was decreed to account, &c. It was further ordered, that the auditor state an account between the parties upon the proof then in the cause, or which might thereafter be introduced.

On the 8th of November, 1828, the auditor reported, that upon an examination of the proceedings it appears, that by an order passed on the 4th April, 1806, one *Samuel Vincent* was appointed trustee, to carry into effect the will of *Charles Rogers ;* that he bonded, and acted as such, until 1814, when he resigned in favor of the defendant, *John Diffenderffer.* It does not appear that said *Diffenderffer* was ever formally appointed trustee, but he has been recognized as such by the court, in several orders, and as trustee, admits that he has received rents and profits to a large amount. It also appears that said *Vincent,* as trustee, returned an account of his receipts and disbursements, with his vouchers, which were referred to the auditor, and on the 23d December, 1818, sundry accounts were reported, but they yet remain undisposed of—with this report five accounts were filed.

Account (A) stated according to the instructions of the trustee's solicitor, charged him with all his admitted receipts, and allowed a commission thereon of ten per cent. also all his expenses, for taxes, repairs, &c. and the sum of $2578,78, on the ground that an equal sum had been paid by the former trustee, to the other devisees, *Ann Martin, Mary Lee,* and *Sarah Bailey,* out of the rents and profits received by him, over and above their respective shares thereof.

Account (B) also stated in conformity with the defendant's instructions, differs from the first, only in charging the trustee with interest on the balance in his hands, at the filing of the bill ; yearly rests are made, and interest allowed on the balance of principal in hand, at the end of each year to the time of taking the account.

Account (C) stated according to complainant's instructions, disallows any commission to the trustee, and credits him only with his disbursements, for repairs, taxes, &c. Yearly rests are made, and interest charged on the *balances* in the trustee's hands, at the end of each year.

Account (D) is stated according to the auditor's views of the justice of the case, and like account (C) makes annual rests, charging interest on the *balances*, and allowing the trustee a commission of ten per cent. Exceptions were reciprocally filed by the parties to these accounts.

BLAND, Chancellor, at September term, 1829, passed the following decree :

This case standing ready for hearing on the exceptions to the auditor's report, and for final hearing on the decree to account, the solicitors of the parties were fully heard, and the proceedings read and considered. By the decree of the 7th of April, 1828, the extent of the interests of the respective parties was determined. A partition of the real estate was directed, which has been finally made accordingly; and it was also ordered that the defendant, *John Diffenderffer,* render a full and true account of the rents and profits of the property in the proceedings mentioned, during the whole time the same has been, or may remain in his possession or under his control, and the case was sent to the auditor with directions to execute this decree to account, who has reported several statements accordingly. And the only matter now to be determined is, whether any, or which one of those statements is correct; and the amount which the defendant, *John Diffenderffer,* ought to be decreed to pay to each one of the other parties to this suit. The bill states that the trustees named in the will of the late *Charles Rogers,* expressly refused to accept the trust, and are now dead, and that no trustee to carry it into effect had been appointed by any competent authority. But the defendant, *John Diffenderffer,* in his answer, has referred to the record of the case in this court, of *Sarah Rogers, et al.*

*vs. Merryman and Smith*, on a petition filed on the 27th of February, 1806, from which it appears that by a decree in that case, passed on the same day, *Nicholas Hopkins* was appointed a trustee, and on his declining to act, *Samuel Vincent* was appointed a trustee for the purpose of carrying the will into effect, on the 4th of April, 1806, who gave bond as such, and acted for some time. That after the death of *Sarah Rogers*, the widow, and after the death of two of the daughters of the testator, *Ann* and *Mary*, without issue, the trustee, *Vincent*, made a statement of his receipts and disbursements on oath, upon which the auditor reported two statements, one shewing the balance in the trustee's hands due to the legal representatives of *Charles Rogers*, viz : $2889 47, and the other shewing the balance due to the representatives of *Sarah Rogers*, viz : $227 83; which report and statements were, by an order of the 12th September, 1810, *confirmed*, and by a subsequent order of the 15th of December, in the same year, it is said, "that since the above order of the 12th of September, a report has been made by the trustee of the matters directed therein, by which it appears *that the debts of Charles Rogers had been paid, except an account of small consequence,* and the executors of *Sarah Rogers* have informed the court, that they wait for the sanction of the account rendered by the trustee—on this part of the case, the trustee is authorised and directed to pay to the executors of *Sarah Rogers* the sum reported due to her representatives, being $227 83; as to the balance due to the heirs, the trustee is authorised and directed to pay one-fourth part thereof to *Sarah Bailey*, and to take her separate receipt therefor, according to the will of *Charles Rogers*, and one-fourth part to *Catharine Diffenderffer*, taking her separate receipt therefor. For the two other fourth parts, a further order will be given on the determination of the appeal in the suit mentioned in the report." Some years after which, the trustee, *Vincent*, in a letter dated on the 23d of November, 1814, addressed to the Chancellor, says, "I inform you of my resignation of the

trust in the estate of the late *Charles Rogers*, and have given it into the hands of Mr. *John Diffenderffer*, one of the heirs at law." There does not appear to have been any order passed on this resignation. But on an application, dated on the 20th of December following, made by *John Diffenderffer*, in which among other things, he says, "on examining the account of Mr. *Samuel Vincent*, trustee of the late *Charles Rogers'* estate, I find that he has charged a considerable sum of money to *Sarah Bailey*, *Ann Martin*, and *Mary Lee*; it appears to me by the will of the late *Charles Rogers*, they were not to receive, or entitled to any, *till his debts were paid, which was completed on the 9th of April*, 1808." Upon which, in an order of the 25th of March, 1815, it is said, "on the application of *John Diffenderffer*, who married one of the heirs, and on the resignation of *Samuel Vincent*, the trustee, the Chancellor has examined the former proceedings. Before any further order can be made, it will be necessary for him to be furnished with a transcript of the proceedings in the suits by *Mrs. Bailey* and *Mrs. Diffenderffer*, which were carried to the Court of Appeals, as mentioned in the report of *Samuel Vincent*." And by an order of the 8th of July, 1816, it is said—"It being represented that there is an error in the report, as to the suits in the Court of Appeals, mentioned in the order of the 25th of March, 1815, the auditor may proceed to examine the reports and vouchers, without waiting for the transcripts, and report thereon, giving notice to the *former and present trustee*." From all which I take it to have been finally settled by the judgment of the court, in the case of *Sarah Rogers and others vs. Merryman and Smith*, to which the widow and the four daughters of the late *Charles Rogers*, were all parties; first, that the debts of the testator had been all properly and correctly paid by the late trustee, *Vincent*, and that a share of the surplus, left after their payment, having been ordered to be paid to *Catharine Diffenderffer*, who had been a party to that suit before her marriage, is conclusive upon her and those

claiming under her. Because so long as those orders of the 12th of September, and 15th of December, 1810, remain in full force, (and they are not now revisable in any way) she, nor any one claiming under her, cannot be permitted in any way to question the correctness of the manner in which the debts of the late *Charles Rogers* were paid, which has been so distinctly noticed, considered and confirmed by those judgments of the court. And in the next place, that it has been finally determined by the judgment of this court, as indicated by the orders of the 25th of March, 1815, and the 8th of July, 1816, that this defendant, *John Diffenderffer*, was to be considered thenceforward as the trustee, for the execution of the will of the late *Charles Rogers;* and that he had succeeded to that trust under the authority of this court, immediately after the resignation of *Samuel Vincent,* on the 23d of November, 1814. These positions which have been established in that case, appear to me to furnish a very satisfactory answer to the claim of the representatives of the late *Catharine,* to be substituted for, and allowed to take the place of the creditors of the late *Charles Rogers,* on the ground of their having been improperly paid with their funds, and upon that ground to have certain sums withheld, for their use, from the distribution now about to be made; and also to the objection that *John Diffenderffer* is here claiming only, as the natural guardian of his own children, and in opposition to the plaintiffs; since those proceedings shew that he stands here as a trustee, constituted by the authority of this court, for the benefit of all the devisees under the will of the late *Charles Rogers.*'

But passing over all the proceedings and final adjudications in that case of *Rogers and others vs. Merryman and Smith,* let us return to the decree in this case of the 7th of April, 1828, by which, the defendant, *John Diffenderffer,* has been called upon to account for the rents and profits, for the whole time the property has been in his possession, or may remain in his possession. The statements reported by the auditor, and the exceptions of the parties to those state-

ments, present two distinct subjects for the consideration of the court. First—the claims and pretensions of the representatives of the late *Catharine;* and secondly, the allowances and liabilities of this defendant, *John Diffenderffer.* It has been urged that the debts of the late *Charles Rogers* were paid contrary to the directions of his will by the trustee, *Vincent,* out of rents and profits, which ought to have gone to the late *Catharine;* and consequently, that she, or her representatives, to the extent of the rents and profits to which she was entitled, and which have been so misapplied, ought now to be allowed to take the place of those creditors, as against those funds in the hands of this trustee, and which are now about to be distributed. This stand is taken upon the ground of substitution, and it can only be maintained by means of those principles, by which a surety, or one who has been placed in the condition of a surety, is allowed to take the place of the creditor against the principal debtor; or by the help of those principles by which securities or assets are marshalled, so as to satisfy all, or to leave the loss fall where it must rest, according to the positive rules of law, or by the aid of the general principles of equity, arising out of some fraud or injustice practiced or participated in by the plaintiffs, or those under whom they claim. It is a well settled general rule, that no one can be allowed to intrude himself upon another as his surety: and, therefore, if a man voluntarily pays the debt of another, without any agreement to that effect with the debtor, he cannot take the place of the creditor, or in any way recover the money so paid, of the debtor. Because the law does not permit one man thus officiously, and without solicitation, to intermeddle with the affairs of another. *Stokes vs. Lewis,* 1 *T. R.* 20. The only exception to this general rule is, where, on a bill of exchange being dishonored, a third person, not a party to it, may pay it for the honor of the drawer, or any of the endorsers—and the reason of allowing this exception is, that it induces the friends of the drawer or endorsers, to render

them this service, and by that means preserve the honor of commerce, and the credit of the trader.· *Chitty on Bills,* 164. But where one by express contract becomes bound as a surety for the payment of the debt of another, or as an insurer against loss, then, if the surety or insurer pays the whole debt, or reimburses the loser, he thereby entitles himself to demand a full assignment, or subrogation of all the securities of the creditor, or insured, and has a right in all respects, to be substituted for the creditor or insured, so as to enable him to obtain reimbursement from his principal. *Poth. Ob. p.* 2, *Ch.* 6. *Art.* 4. *Coop. Inst.* 612, 420. *Randall vs. Cochran,* 1 *Ves. Sr.* 99. This right of a surety to a certain extent, has been affirmed by our act of 1763, *ch.* 23, *sec.* 8. And this court has so entirely approved of the doctrine, as to allow a surety who had paid the whole purchase money, to have the benefit of the equitable lien of the vendor. *Melay vs. Cooper,* 13th Feb. 1804; and also to allow a surety on a custom-house bond, who had paid the whole debt, to take the place of the government, and thus to secure to himself the high and overruling preference, to which such a creditor is entitled. *Mickle vs. Taylor,* 1806. These principles in regard to those who stand properly in the relation to each other, of principal debtor and surety, have been extended for the benefit of an executor or administrator, who may have been induced through mistake, to pay the debts of the deceased, beyond the amount of the assets, which came to his hands, in which case, he has always been allowed in this court, as in *England,* to take the place of the creditor, and obtain reimbursement out of the real assets of the deceased. And if the debt so overpaid, was on a judgment against the deceased, operating as a subsisting lien upon his realty, the executor or administrator is permitted to take the place of such judgment creditor, and to have a preference in the distribution of the real assets over creditors of inferior grade. *Street vs. Cook,* 1809. *Robinson vs. Tonge,* 3 *P. Will.* 400.

- This doctrine of substitution embraces only those cases where there is a principal debtor, and a surety by express

contract; or where for the benefit of commerce a man is allowed voluntarily to place himself in the condition of a surety; or where he had by mistake, as in the case of an executor, made payment as if it had stood in that situation. Now before any of the principles upon this subject, can be brought to bear upon the case under consideration, it must appear that the plaintiffs, *Araminta,* or those under whom she claims, were the principal debtors, or that the trustee, *Vincent,* was the principal, and that *Catharine,* or those claiming under her were their sureties. And that those claiming under *Catharine,* were now here, asking to be reimbursed as such, out of the funds of their principal now in the hands of the court. But the assumption of any such statement would be in direct opposition to all the proofs in the case. *Vincent* was a trustee, appointed by this court for the benefit of all concerned in the estate of the late *Charles Rogers,* and if he misapplied the rents and profits, which came to his hands, he alone is responsible. If this court were now to make good to *Catharine's* representatives, any amount of the rents and profits, which had been misapplied by *Vincent* to their prejudice, out of the proportion of the funds now about to be distributed, to which the plaintiff, *Araminta,* is entitled, it would be in effect, to treat her as the principal debtor, for whose benefit among others, *Vincent* was not merely a trustee, subject only to the order of this court, but who was in fact her own proper agent; or it would be to consider *Araminta* as the surety of the trustee, *Vincent.* But there is nothing in the case to warrant the placing of *Araminta,* in any such condition of responsibility ; and therefore the representatives of the late *Catharine* cannot sustain themselves, in the stand they have taken, by any principles derivable from the case of a principal debtor, and surety.

But the representatives of the late *Catharine* insist on having the securities, or these assets now about to be distributed, so marshalled, as to reimburse them to the amount of their share of the rents and profits, which had been misapplied by the former trustee, *Vincent.* The marshalling

of securities is only made where the debt is so secured, as to give the creditor the means of obtaining payment out of two funds, and other creditors can reach only one of them. In such case the court will compel the creditor who holds the more comprehensive security, to obtain payment as far as practicable, out of the fund which the other creditors cannot reach. So as to leave the other fund to be distributed among the creditors holding inferior securities. 1 *Mad. Ch.* 250. But there is no sort of analogy between the case of creditors, whose securities may be thus marshalled for the benefit of all, and without injury to any, and the case now under consideration. The plaintiff, *Araminta,* and the representatives of the late *Catharine,* stand precisely in the same situation; not as creditors seeking payment by way of preference, or otherwise, from the assets of a debtor; but claiming the distribution of a fund to which they are equally entitled. Marshalling of assets respects two different funds, and two different sets of parties, where one set can resort to either fund, the other to only one. As where there are real and personal assets, and judgment, and simple contract creditors, the real assets will be applied to the satisfaction of the judgment creditors, so as to leave the personalty to satisfy the debts due by simple contract. 1 *Mad. Ch.* 615. But here there is but one fund, and one set of claimants, who all deduce their titles from the same fountain. There is then nothing to be drawn from the principles of equity, in relation to the marshalling of securities, or of assets, which can in any manner aid the representatives of the late *Catharine,* in maintaining the stand they have taken. It has, however, been argued, that the amount misapplied by the trustee, *Vincent,* came to the use of those under whom *Araminta* claims, and therefore that it ought to be deducted from the share, now about to be awarded to her. If it has been shown that *Vincent* had fraudulently misapplied the funds, and that *Araminta,* or those under whom she claims had participated in the fraud; or that *Vincent* had paid money properly belonging to the

late *Catharine,* or her representatives, to *Araminta,* or those under whom she claims, who had received it, knowing it to be such, then there would have been a strong equitable ground, for deducting the amount so received, for the benefit of the representatives of the late *Catharine,* from the amount now about to be awarded to *Araminta.* But there is no proof whatever, of any fraud in *Vincent,* or of any participation in it by *Araminta,* or those under whom she claims, or of their having received any sum of money, knowing it to be the money of the late *Catharine,* or that it was money to which they were not justly entitled. Upon the whole, therefore, I am of opinion that no deduction whatever, can be made from the share to which the plaintiff, *Araminta,* is entitled, because of any misapplication of the rents and profits, in payment of the debts of the late *Charles Rogers,* or on account of any other misapplication of them by the former trustee, *Samuel Vincent.*

Having thus disposed of the claims of the representatives of the late *Catharine,* it only remains to determine the extent of the allowances and liabilities of the defendant, *John Diffenderffer.* It has been argued on his behalf, that he cannot be considered as a trustee, because he took possession of this property in no other character than as the natural guardian of his children. Admitting that he did so, he himself states, that he held their right under the will of their grand-father, and so far according to his own showing, he took possession of this property, in the character of a trustee; and as such he undertook at his peril, with the title deeds of his children before him, to claim and hold on their behalf, a much larger interest than that which belonged to them. He had thus confessedly assumed no higher character, than that of trustee for those who had the right, and now that it clearly appears, and has been determined by the decree of this court, that the whole right was not in his children, he certainly cannot be allowed to assume a new character, and to retain rents and profits, which he does not pretend to have received as his own, but for the

use of others, who it has been determined have no right to them, and who cannot be allowed to receive them, or be held accountable for them. The decree of the 7th April, 1828, is however, conclusive upon this subject. Under that decree he has been called upon to account for the benefit of those, the extent of whose interests has been determined by it. But it appears from all the proceedings, that he has had in all respects, as complicated and troublesome an estate to deal with, as ever was committed to the management of an executor or administrator. His receipts have been very numerous, many of them small, and the collections and disbursements, *it is evident, must have been* attended with much trouble, and therefore, upon every principle of analogy, (apart from considering him as the successor of *Vincent,* to whom ten per cent. had been allowed,) I am of opinion that ten per cent. commission is a reasonable compensation, and I shall therefore ratify the statement of the auditor which makes that allowance.

It is contended on behalf of *John Diffenderffer,* that he is not chargeable with interest at all, while on the other hand, compound interest is claimed of him. Legal interest is the measure of damages, which the law allows in all cases for the detention of money, which the holder is made to pay, where he is in any default in not paying or applying the money in his hands, as he was bound to do. *2 Fonb.* 423. The general rule is, however, that interest is not given upon interest; and therefore in this court when interest is allowed, it is computed by the auditor, from the time the money became due, up to the time of stating the account, and the decree is made for the whole amount with interest only on the principal sum, from that time till paid; by which mode of computation and decree, compound interest is excluded, and this appears to be the rule in *Virginia. Sheppards' Ex. vs. Stark, et ux.* 3 *Munf.* 41.

It has long been the established course of this court, according to the rule laid down by the Court of Appeals, in taking an account of rents and profits, to charge the party

with interest thereon, from the respective times they were received, *Davis vs. Walsh*, 2 *Harr. and Johns.* 329. In this case, one of the accounts of rents and profits has been stated with annual rests, at the instance of the plaintiffs, and the statement has not been objected to. It is more favorable to the defendant, *John Diffenderffer*, than to charge him with interest according to the rule of the court, from the time each sum was received, and therefore the computation of interest from the rest, will in this case be approved.

But it is objected, that interest should not be charged on the interest computed as a portion of the balances, at each of those rests. From all that has been said upon this subject, I take it that interest upon interest, or compound interest, may be charged in three kinds of cases; first, where with the knowledge and permission of the debtor, his whole debt, principal and interest, has been paid by a third person, or his surety, because as to such third person or surety, the interest is the same as the principal sum lent. 2 *Fonb.* 438. Secondly, where a trustee or holder of money has been directed, and undertakes to invest the sum placed in his hands in a way to make it productive, and fails or refuses to do so, he shall be charged with compound interest. As where a trustee who had been appointed by a decree of this court to make sale of certain real estate, was ordered to invest the proceeds of sale, then in his hands, in bank stock, and that he should in like manner invest the dividends arising from such investment; and on his failing and refusing to do so, the auditor was directed to state an account, charging him with interest, which he was ordered to bring into court, with interest on the interest so charged, until brought in, which order was, upon an appeal, affirmed. *Brewer vs. Hanson*, 1 *Harr. and Gill*, 12. And thirdly, where a trustee has received rents and profits, which he should have applied so as to be productive, or towards the maintenance of devisees, but failing or refusing to do so, retains and uses the money as his own, in a manner to derive profit from it, there also, he shall be charged with

the whole profits he has made from the use of it, or on his failing clearly to shew what those profits were, it will be presumed, that the annual amount of interest has yielded him interest, and he shall be charged with interest thereon accordingly, considering each year's interest as an addition to the capital sum lent or withheld.

The equity of this last rule is founded upon the fact of the beneficial application of the money to the trustee's own use, in violation of his trust, and to the prejudice of the *cestui que trust*, and therefore it must appear, that the nature of the trust required the trustee to make the funds which came to his hands productive as soon, and to as large an amount, as practicable, in the mode prescribed, or in some other reasonable way at his discretion; or that he was required to apply them to the maintenance or education of the *cestui que trust;* and it must also appear that he not only failed to do so, but applied the money to his own use, or put it to hazard in a manner in which he did, or might have derived a profit from it. That the trustee was required to invest, or make a beneficial application of the money, may be shown by the terms in which the trust was created. But whether he has applied it to his own use or not, must be shown by proof. Whether the pecuniary ability of the trustee was such as to enable him to pay at any time when called on, is a matter of no consequence, as regards the question of interest. The making of a deposite of this money at a bank as his own, or making purchases with it, or using it in the course of his trade, has been deemed sufficient evidence of his deriving such a profit from it, as to authorise the court to charge him with interest upon each annual amount of interest. In the case under consideration, it very satisfactorily appears to have been the duty of the defendant, *John Diffenderffer*, to have applied the rents and profits received by him, for the benefit of all the devisees of the late *Charles Rogers*, and that instead of doing so, he deposited them as received, in bank as his own, drew them out, made purchases, and used them for his own use and

benefit exclusively. What advantages he derived from those rents and profits, thus mingled with his own money, from the time of their being deposited in bank, has not been shown, but such a course of management must have been very beneficial to himself, and greatly injurious to the devisees. Such a course of conduct by any one, standing as this defendant, *John Diffenderffer* did, bound to make the funds received by him productive, or constantly useful to those entitled to them, cannot be tolerated by this court. I am therefore of opinion, that he has been correctly charged with interest on the whole amount, including principal and interest, found to be in his hands at each rest. *Newton vs. Bennett,* 1 *Bro. Ch. R.* 359. *Roche vs. Hart,* 11 *Ves.* 59. *Raphael vs. Boehm, Ib.* 92. *Raphael vs. Boehm,* 13 *Ves.* 408. *Raphael vs. Boehm, Ib.* 591. *Ringgold vs. Ringgold,* 1 *Harr. and Gill,* 12. *State of Connecticut vs. Jackson,* 1 *Johns. C. R.* 14. *Schiefflin vs. Stewart, Ib.* 624.

*Decreed,* that statement (D) be ratified and confirmed, and the others rejected—and that *John Diffenderffer* pay unto the plaintiffs, and to each of the other parties, their costs.

From this decree both parties appealed to this court.

The cause came on to be argued upon the cross appeals before BUCHANAN, Ch. J., ARCHER, and DORSEY, J.

*Dulany,* for the appellant, (*Diffenderffer*) contended,

1. That under the circumstances of the case, *Diffenderffer* was not chargeable with compound interest,—he took possession of the property, believing it to belong to his wife and children. The will does not direct the trust fund to be invested for the purpose of accumulation; nor is there any express declaration that the property was given for the maintenance of the *cestui que trusts.* There are but two cases in which compound interest was ever charged. In the one, the charge was made upon the ground of fraud; in

the other, upon the fact, that the trustee had used the funds for his own benefit, the rule being, that an executor or trustee shall make no profit to himself from the estate in his hands. In *Schiefflin vs. Stewart*, 1 *Johns. C. R.* 623, Chancellor *Kent* infers that compound interest has been charged in some *English* cases, because rests were taken, though such is not necessarily the case.   A mere misapplication of funds by an executor, will not subject him to compound interest; he can only be so charged upon the ground of profit, and proof of such profits must be adduced. It is not sufficient that the executor is silent as to the extent of his profits; there must be actual proof that he has made profits equal to compound interest before he can be charged at that rate.   This principle is recognised in *Ringgold vs. Ringgold*, 1 *Harr. and Gill*, 12—and also in *Tibbs vs. Carpenter*, 1 *Madd. Rep.* 162. 1 *Chitty Dig.* 548.   *Earl of Hardwick vs. Vernon*, 14 *Ves.* 504.   *Raphael vs. Boehm*, 13 *Ves.* 411. *Bates vs. Scales*, 12 *Ib.* 402.   These cases also shew, that although the general rule is, that compound interest shall be charged where the trustee has used the fund, yet the courts always look to the peculiar circumstances of the case, and never but in one case, in *England*, has compound interest been actually decreed.   The answers of *Diffenderffer* to complainant's interrogatories show, that he has not made a profit equal to compound interest; on the contrary, he invested the money in stocks, by which he lost; and he is also shown to have kept by him constantly, large cash balances.   Although, therefore, the rule was, that investing in stocks, shall charge an executor with compound interest, upon the ground that he is thus presumed to have made such interest, yet in this case, there is abundant evidence to repel such a presumption.   The courts do not charge compound interest as a punishment, but upon the ground of profit; and consequently, if profits equivalent to the interest are not made, the charge cannot be supported.

2. But *Diffenderffer* is not chargeable with interest at all. He took possession of the property, under the impression

that it belonged exclusively to his own children—his answer and the proofs, show this clearly. He was ignorant of the actual *cestui que trusts*, and the question is, did he use due diligence to inform himself correctly on the subject. The possession of the property was derived by him from *Vincent*, who had acted in the character of trustee, from 1806 to 1814, and who was consequently familiar with all the circumstances of the case. He was the very person therefore, to whom *Diffenderffer*, as a prudent man, should have applied for information on this subject, and his doing so, repels the idea of any fraud on his part. He was put into possession of this property by *Vincent*, as belonging exclusively to his wife and children. More than ordinary diligence to obtain accurate information in this respect, cannot be required. Other men, under similar circumstances, would have done as he did. Defendant was acting under the influence of an honest mistake, into which any man of ordinary prudence might have fallen, and therefore he should not be made to pay even simple interest, which is charged upon the ground of negligence. *Bruere vs. Pemberton,* 12 *Ves.* 390. 2 *Chitty Dig.* 1311. 3 *Atk.* 444. *Franklin vs. Green,* 2 *Vern.* 137. *Attorney General vs. Corporation of Exeter,* 2 *Rus.* 45. *Att'y General vs. Dean and Canons of Christ Church,* 2 *Rus.* 321. The money has been received under a mistake, and therefore does not carry interest, notwithstanding the infancy of the complainant—a claim for interest in such a case, even by an infant, is neither moral nor equitable. The rights of a minor, in a case like this, cannot be different from those of an adult; the error of the defendant is equally a protection against the claim for interest, whether the money received by him belongs in fact to an adult or a minor. All the defendant is bound to do in such a case, is to refund the money when the mistake is discovered. *Brisbane vs. Dacres,* 1 *Serg. and Low.* 50, 51. The Chancellor decides that *Diffenderffer* knew that he was a trustee, and if he had acted in that character throughout, then when the real parties were discovered, the fund must

be preserved for them.   Conduct which might be consider-
ed as negligent, in reference to a stranger, would not be so
regarded with respect to a wife and children.   The mo-
tives must be looked to.   A husband may use the separate
estate of his wife.   If her dissent does not appear, he is
not responsible for rents and profits.   *Smith vs. Camberford,*
2 *Ves, Jr.* 698.   *Methodist Esp. Ch. vs. Jacques,* 3 *Johns.
Ch. R.* 78, 79.   *Squire vs. Dean,* 4 *Bro. Ch. R.* 326.
1 *Atk.* 269.   *Powell vs. Hankey and Cox,* 2 *P. Wms.* 82,
83.   If the benefit of the trust fund is enjoyed by the *cestui
que trust,* the trustee shall not pay interest; though he
too, may derive an advantage from it, as in the case of a
parent acting as trustee for his children.

3. The evidence shews that $2578 77 of money, belong-
ing to *Mrs. Diffenderffer,* was used by the former trustee
to pay debts which were incumbrances on the shares of the
other *cestui que trusts,* and consequently, the appellant in
right of his wife, is entitled to a credit to that amount out
of the funds of those *cesqui que trusts,* which have since
come to his hands.

   *Johnson* for the appellees, (*Winder* and wife.)

The question about which it is said *Diffenderffer* was
mistaken, was, whether the whole interest in the devise to
*Ann Martin* and *Mary Lee,* did not survive to *Mrs. Diffen-
derffer.*   That question is not now open.   The decree of
March term, 1828, deciding differently, is not appealed
from.   All the facts were in the knowledge of *Diffenderf-
fer,* as appears by his answer; and in 1815, when the trust
devolved on him, he took it, as it was held by *Vincent,* and
according to the will of *Rogers.*   He took it avowedly for
the benefit of the *cestui que trusts*—kept a separate account
of the receipts, and professes at all times, to have been
ready and willing to account for them.   It is a principle of
equity, that a party, who with knowledge, comes into the
possession of an estate subject to a trust, takes as trustee,
for the benefit of those who *actually* are the *cestui que*

*trusts*, and not those whom he may *suppose* to be. *Mech's Bank, vs. Seton*, 1 *Peters' S. C. Rep.* 309. *Diffenderffer's* situation cannot be better than *Vincent's* would have been. He claims, and is allowed a commission, as having been substituted for him. All the orders in the Court of Chancery from the resignation of *Vincent*, recognize *Diffenderffer* as the trustee, though no decree appointing him can be found. When the bill was filed in August, 1825, the defendant was in possession confessedly as trustee, when instead of a full and frank answer, manifesting a willingness to account, he sets up a title adverse to the complainants, and drives them to except to his answer. The answers show that every difficulty was interposed up to the date of the decree in 1828. It was proved on the part of the complainants, that *Diffenderffer* used the trust money as his own, and when he was called upon to say what use he had made of it, he refused to say, except that he had some stocks, without saying how much, upon which money was lost. But he will not give a detailed and full account, which he certainly could have done, if so disposed. Defendant during the whole time was a trader, and the money not used in buying stocks, was used in his trade, thus putting it to hazard, and pocketing himself the profits, whatever they may have been. When a merchant refuses to disclose his profits, he will be charged with compound interest, if he has used in his trade a fund held by him as trustee. All the cases shew, that a trustee cannot make a profit out of the trust fund, for the benefit of any but the *cestui que trust*. The case of *Ringgold vs. Ringgold*, 1 *Harr. and Gill*, 12, decides that beyond dispute. If the defence set up in the last answer is good against the complainants, it is good against the other *cestui que trusts*, whose rights the defendant had acknowledged before. The inference then is, not only that he made profits which he was unwilling to disclose, but that he designed, and still designs to keep them for his own benefit. A trustee who is ready and willing to account, and gives every information for that

purpose, will be more leniently dealt with, than one whose conduct is the reverse. When a *cestui que trust*, calls on his trustee for the trust fund, he has not only a right to the fund itself, but likewise all the attending advantages. That portion of these rents and profits which belong to the complainant, *Araminta*, certainly was not used for her support, and it must therefore have been employed by the trustee in his trade, or invested in stocks for his own benefit. We have a right to call for an annual account, and to convert the profits of each year into capital at the end of the year. These profits are the property of the *cestui que trusts*; and to make the trustee pay only simple interest, would be *to* allow him to use a portion of their money without interest. If the defendant did not in fact use the money, but kept a separate account of it, he could have shown the fact, and having failed to do so, the inference is against him. *Schiefflin vs. Stewart*, 1 *Johns. Rep. Ch. R.* 620, 625. *Raphael vs. Boehm*, 11 *Ves.* 92. The fact, that the testator in the latter case had directed an accumulation, does not distinguish it from the case under argument, because the law makes it the duty of a trustee to do so without any such direction. The case of *Schiefflin vs. Stewart*, received the sanction of this court in *Ringgold* and *Ringgold*. In the latter case, the trustees were exonerated from the charge of compound interest, solely upon the ground, that it appeared in evidence that they had not made it. If the trustees had used the money in their business, there can be no doubt they would have been so charged. *Darne vs. Catlett*, 6 *Harr. and Johns.* 482. It is not pretended in this case that *Diffenderffer* did not use the fund, and use it beneficially for himself. The allowance of compound interest is to reach the supposed gains of the party, which can be got at in no other way. Deprive the court of this power and you render it powerless, because the *cestui que trust* can rarely ascertain the actual profits of the party. When a trustee admits he has made profits, but is unable to say how much, he shall be charged with

compound interest. *Walker vs. Woodward*, 1 *Russell*, 107. *Stearns vs. Brown*, 1 *Pick.* 538. *Biglow's Dig.* 388.

2. The second question is, as to the liability of a trustee to pay simple interest upon trust money used by him. It is conceded that he is bound to pay those whom he knew to be *cestui que trusts*, and it would seem hard, that the unknown *cestui que trusts* should be in a worse situation. Now it is not pretended that *Diffenderffer* took possession of this property, believing it to be his own : he admits the contrary in his answer. A party who uses the money of another, is bound, as a matter of law to pay interest for it. *Newson vs. Douglass*, 7 *Harr. and Johns.* 417. *State use Kirk vs. Fridge*, 3 *Gill and Johns.* 103. It is said, however, that he is not bound to pay the other *cestui que trusts*, because they were his children, and he was charged with their support. If this were so, it is no reason for refusing interest to *Araminta*, with whose support he certainly was not burdened. But it is not law with respect to his own children, whose separate estate is not liable for their support, if the father is in a condition to support them. *Butler vs. Butler*, 3 *Atk.* 60.

3. With respect to the $2578, to which it is said complainant is entitled to a credit, in right of his wife, as being so much of her money, applied to discharge debts which ought to have been paid out of the funds of the other *cestui que trusts;* it cannot be claimed upon the ground of an over-payment to those persons, because such a claim should be preferred against *Vincent*, the former trustee, or the parties who actually received it. In order to raise this question, two facts should distinctly appear—1st. That debts to that amount were in fact paid—and 2d, not only, that they were paid out of the profits of property specifically devised to *Mrs. Diffenderffer*, but also that the testator, *Charles Rogers*, did not leave personal property adequate to the payment of his debts. The claim is, to be substituted for the creditors who have been paid, and of course the rights of

those creditors, and none other can be asserted. *Gists' adm'r vs. Cockey and Fendall,* 7 *Harr. and Johns.* 134.

*Taney,* (Att'y General *U. S.*) in reply.

1. There is no pretence of a wilful abuse of power, or negligence on the part of the trustee, nor that he ever intended the slightest injury or injustice to the *cestui que trusts,* whom he believed, were his wife and children. The direct purpose to injure persons standing towards him in such relations, cannot be presumed. He insisted that in the whole history of *English* and *American* law, but two cases could be found, in which compound interest had been actually charged. It has never, in a solitary instance, been done by this court, and a case like the present, free from fraud, negligence, or the imputation of improper motives, will hardly be selected, as the first one, for the application of so harsh a principle. The general rule is to charge simple interest. Compounding the interest is an exception, and the case of *Raphael vs. Boehm,* 11 *Ves.* 92, is in its very terms, an exception. On this point he referred to *Tibbs vs. Carpenter, et al.* 1st *and* 2d *Madd.* 162, 167.

2. As the defendant, for the first time, received notice of the present claim by the filing of the bill, he is not liable for even simple interest, under the circumstances of the case. The property was not taken possession of by him, as his own, nor did he enter as a general trustee of the trust fund, but as the specific trustee, for certain known and named *cestui que trusts,* for whose benefit alone, can he be considered as having received the property. The obligations of a trustee depend upon the character of his undertaking. In this case he undertook, and merely entered, for the use of those *cestui que trusts,* whose separate estate he supposed he was receiving from the general trustee. He could not dispute the title of those persons, nor could he divert from them to others, the income of that estate. The cases cited show how kindly the court will deal with a trustee who as acted ignorantly, but *bona fide,* particularly when

the mistake has been committed by a person confided in by the Court of Chancery. Not having entered for himself, but for others, it cannot be presumed that he made profits; and in this view of the case, it is immaterial that the *cestui que trusts*, were his own children. He was as much bound to protect them as strangers. 1 *Chitty Dig.* 511. Where the trust is for the benefit of a wife, the husband will be presumed to apply it for her benefit, and with her consent, if he mixes the fund with his own, and uses it for the support of the family and in his business—unless objected to by the wife; the husband has a right to employ her trust fund for her benefit. 2 *Pierre Wms.* 82. It is not true, that in every case, a parent will not be allowed to apply a portion of his child's estate for his maintenance. 3 *Atk.* 60. And the permitting him to do so, is in harmony with the policy of our laws, which aims as far as practicable, to produce a pecuniary equality in members of the same family. The appellant, *Diffenderffer*, had a right so to apply the fund, and although he did not act formally as their guardian, yet as he asks a credit for no more than would be sufficient for their comfortable maintenance, a Court of Chancery will protect him.

3. The defendant is entitled to be reimbursed for the $2578. It constituted a part of certain debts made by the will of *Rogers*, a lien on the estates of his daughters *Ann*, *Mary*, and *Sarah*. The property devised by the testator to *Mrs. Diffenderffer*, was not liable for any part of it. It was an incumbrance on the estates of the others—not merely on the income, but on the land itself. This money was paid by *Vincent*, out of the funds of *Mrs. Diffenderffer*, in his life-time; it was not a voluntary payment by her, but by the trustee, and by this appropriation of her money, a charge was removed from the estates of the other *cestui que trusts*, and the property thereby has devolved on those in remainder, disencumbered of the lien—they have the full benefit of the payment. This money having been paid from rents falling due in the life-time of *Mrs. Diffenderffer*,

the present defendant, her husband, is entitled to a credit for it.   As *Vincent's* accounts, settled in the Court of Chancery, show that this money was paid out of the trust fund, it is to be presumed not only that they were in fact so paid, but that evidence must have been offered to the Chancellor of a deficiency of personal assets.   An account thus settled in the Court of Chancery, has the same *prima facie* effect, as a settlement by an administrator in the Orphans Court.

Dorsey, J., delivered the opinion of the court.

In disposing of the first point on which a reversal of the decree of the Chancellor has been urged, it is unnecessary for this court to consider, whether the credit insisted on by appellant, of $2578 77, alleged to have been paid by the former trustee, (in satisfaction of the debts due by *Charles Rogers,*) out of that portion of the trust fund to which *Mrs. Diffenderffer* was entitled, ought not to have been discharged by the proceeds of the trust estate, on which those debts were conditionally a lien, accruing before the death of *Mrs. Bailey :* because it does not appear by the record before us, or any of the proceedings which it refers to, and makes evidence, that the personal estate of the testator was insufficient for the payment of his debts.   It has been stated in the argument, that such insufficiency is established by the auditor's statement of the accounts, of the former trustee, made in the year 1818.   But to these accounts, no such operation can be given; having never received the Chancellor's confirmation, they are no evidence of the facts they are relied on to prove.   This credit therefore was properly rejected.

In discussing the question of interest, it has been strongly contended, that no such charge ought to be made, because *Diffenderffer* came into possession of the trust property, as the allotment of his wife, under a division of *Charles Rogers'* estate, made in pursuance of his last will and testament, by *Samuel Vincent,* the former trustee, without a knowledge of any other persons being entitled or claiming title to any part thereof, and that the first intima-

tion of the kind which he received, was the filing of the bill in Chancery, which is now before us. What would be *Mr. Diffenderffer's* rights in such a state of facts, we are not required to determine. He stands not in that predicament before us. It is manifest that *Samuel Vincent* never did make any division under *Charles Rogers'* will, of the real estate devised to *Mrs. Lee, Mrs. Martin,* and *Mrs. Diffenderffer,* the only property whereof a division was directed;—that every thing done by *Hands,* and now relied on, as proof of such division, was to point out to *Diffenderffer,* at the time he took possession of the trust property, the forty feet lot on *Calvert* street, devised in severalty to *Mrs. Bailey.* That so far from being in utter ignorance of the rights, or claims of the appellees, until their bill was filed in 1825, he was fully and distinctly notified thereof, by the auditor's statements in 1818, made under his own eye, and as well, at his instance, as at that, of the former trustee. Had he then believed, as he now alleges, that his wife and children were entitled to the whole of the property confided to his charge, what would have been his course with regard to the auditor's accounts? It is so clearly pointed out both by his duty, and his interest, that what it would have been, cannot be the subject of a momentary doubt. He would have caused exceptions to be filed, and the rights of the parties interested to be definitively settled. His failure to have done this, cannot be otherwise regarded, than as a recognition of the title of the appellees. He has therefore, upon the grounds upon which he has asked it, no claims to lenity at the hands of this court.

Where trustees act *bona fide,* and with due diligence, they have always received the favor and protection of Courts of Equity; their acts have been regarded with the most indulgent consideration. But on the other hand, where they have betrayed their trust; where they have grossly violated their duty; where they have been guilty of unreasonable negligence, they forfeit all claims to the favor and protection of the court. Their acts are inspected with

the severest scrutiny, and they are dealt with according to rules of strict, if not of rigorous justice. This course of proceeding, is productive of the most beneficial consequences, and is founded on the soundest principles of policy. It is the surest, perhaps the only means of securing the fidelity, vigilance, and integrity of those, to whose hands are committed the interests of the weakest, and most unprotected portion of the community.

It was held in *England,* even in the days of *Lord Hardwick,* that an executor was not chargeable with interest who had used for his own benefit, money belonging to the estate of his testator. Subsequently a more just and equitable principle was adopted. It was determined, that an executor or trustee ought not to derive any advantage to himself from the trust property; and that if he used it as his own, or was guilty of *crassa negligentia* in not paying it over to, or investing it for the benefit of the *cestui que trusts,* that he should be charged with the annual interest of *four per cent;* that being the established interest of the Court of Chancery. At a subsequent period, it being found that these abuses by fiduciary agents still continued, and that justice was not extended to *cestui que trusts,* by the rule already established, the court went a step further, and decided, that where an executor or trustee used the trust fund, and refused to render an account of the profits, that he should pay an interest of *five per cent.;* that being the greatest annual interest which the law allowed, and being the presumed amount of profits, to the whole of which, if ascertained, the *cestui que trust* was entitled. At a still later period, a decree was passed, (sanctioned by the opinion of at least three Lord Chancellors) in *Raphael vs. Boehm,* reported in 11 and 13 *Ves.,* by which not only *five* per cent. was allowed, but compound interest also, against an executor who had neglected, as directed by the will, to invest money with the interest accruing thereon by way of accumulation, for the benefit of the children of the testator. 'Tis true, that the decision in that case, was made as depending on the pecu-

liar provisions of the will, under which the executor act-
ed. But it is equally true, that there was nothing in that
will enjoined on the executor, which the law does not im-
pose on him as a duty, without any testamentary injunction
on the subject, where money belonging to the deceased's
estate unnecessarily, and for an unreasonable time, remains
in his hands. And it requires more than an ordinary de-
gree of astuteness, to discern the distinction in a moral point
of view, or in the eyes of a court of conscience, between the
acts of him, who violates the duties required of him by a
testament or deed, and him who in regard to the same sub-
ject matter, violates the same duties imperatively imposed
on him by the established principles of law. But the ap-
pellant here, is not even entitled to the benefit of this dis-
tinction, if any there be, because, like the executor in *Ra-
phael vs. Boehm*, his duties are enjoined on him by the
same authority under which he derives his powers.

In what has been said respecting the legal obligation of
investment by executors or trustees, in whose hands large
sums have, without any reasonable excuse therefor, been
suffered to remain, we do not mean to say, that compound
interest is the indemnity to be made for such negligence.
The current of *English* decisions is against it, and the ques-
tion is not now before us for adjudication. It is hardly ne-
cessary to say that *Mr. Diffenderffer*, by his own acts, and
the recognition of his agency by the Court of Chancery,
stands precisely in the same attitude in which he would
have stood, had he been a trustee regularly constituted
by a decree of that court. The doctrine of *Raphael vs.
Boehm* has been elaborately investigated, and learnedly
discussed in *New York*, by that most distinguished jurist,
Chancellor *Kent*, and has been adopted to its fullest extent
in the case of *Schiefflin vs. Stewart*, 1 *Johns. Ch. R.* 620,
where no directions for investment or accumulation are to
be found. The allowance of compound interest prevails in
like manner in *South Carolina*, as will appear by *Wright
vs. Wright*, 2 *McCord*, 185, where two cases are referred

to, as having previously decided the same question, viz: *Bowles and wife vs. Drayton*, 1 *Desaus*, 489, and *Edwards vs. McMorris, Harper's Eq. Rep.* 224. In *Massachusetts* also, the computation of interest is made on the same principles, as is shown by the case of *Robbins vs. Hayward*, 1 *Pick. Rep.* 528, in which, where large sums of money had come into the hands of a guardian, and no account had been rendered for many years, there being rents from real estate, and income from public stocks periodically received, it was ordered that an account be settled with a rest for every year, including principal and interest; and the balance thus struck, carried forward, to be again on interest, whenever the sum should be so large, that a trustee, acting faithfully and discreetly, would put that sum into a productive state.

Do the facts in this cause present Mr. *Diffenderffer's* conduct as a trustee, in a more favorable aspect, than that in which appeared the conduct of the several defendants in the authorities referred to? Such a comparison he can have no motive to invite. In *Raphael vs. Boehm*, the testator died in 1791. The bill was filed against his executor in 1794, so that the funds were in the executor's hands about three years; and it is not shown that he ever used them for his own benefit. Within three months after the filing of the bill against him, he obtained an order for that purpose, and brought into the Court of Chancery the principal part of the money he had received; and in his answer, after alleging payment of the debts of the deceased, and for the maintenance and education of his wards, he stated that he was ready to pay the balance, and interest for the testator's money, which he had from time to time in his hands, as the court should direct. Contrast this with the conduct of Mr. *Diffenderffer*. He assumed the trust in 1815, and from that time until 1828, he had from time to time, every year received large sums of money, which he continually employed in trade and speculation. He filed more than one defective answer, withholding from the complainants the dis-

covery they sought. He claimed the whole trust fund as belonging to his wife and children, and endeavored by all the means in his power, to stifle the inquiry as to the use he had made of the money received, or the profits which had accrued from its use. After the present litigation had continued nearly three years, he filed a supplemental answer, setting up an unfounded stale claim in a stranger, to one-third of the trust fund; thus seeking to defeat the just rights not only of the appellees, but of his own children. From the year 1815 to the present day, it does not appear that he ever paid, or offered to pay, to any of the *cestui que trusts*, one dollar of the $35,373 48, which he received before the 2d of August, 1828, being the income of the original trust estate. In *Schiefflin vs. Stewart*, the executor himself filed the bill, praying that his accounts might be settled, and stating that he was desirous of paying over the residue to the children of the deceased, or their guardian. It cannot be necessary to draw the strong lines of discrimination between the case at bar, and the cases cited, nor further to prosecute this unpleasant comparison. The interests of the appellant certainly do not urge it.

Is it unjust or unlawful to charge the appellant with compound interest, under the peculiar circumstances of this case? It is a rule of equity, founded as well on principles of natural justice, as of sound policy, and now too well settled to be controverted, that profits made by an executor, or trustee, by the use of the trust fund, belong to the *cestui que trust*; and that if an account of such profits be withheld, that interest shall be allowed as an equivalent therefor. What was the trust fund used by *Diffenderffer*, in the year 1815? The amount received from the trust estate during that year. Of what consisted the trust fund used in 1816? The receipts from the trust estate in 1815 and 1816, and the profits made in 1815. Can a reason be assigned why these profits, thus used by the trustee as so much capital, should not bear interest in the same manner, as any other part of the trust fund enjoyed in the same way? Ought the trustee

to have the beneficial use of these profits for sixteen years, and pay no interest therefor? This advantage he will un-questionably have enjoyed, if charged with the payment of, simple interest only. Justice cannot be administered to the *cestui que trust*, their clear equitable rights cannot be sus-, tained, but by allowing them interest on their profits used. by the trustee. And this, is the compound interest for, which, under the decree of the Chancellor, the trustee. hath been made answerable. If the appellant, be let off. with the payment of simple interest, it would be offering to fiduciaries, a premium for infidelity. It would in effect: be a decree of this court, giving to the trustee several thou-: sand dollars, in addition to his commissions, of the property of the *cestui que trusts*, as a reward of any thing, rather. than a faithful execution of the duties of his trust.

. It may also be remarked, that the established interest of. the Court of Chancery in *Maryland*, is six per cent.; in. allowing compound interest thereon, (unless the delinquen-, cy be of at least twelve years continuance, nay even in the case now before us,) the same additional relief is not obtain-' ed by the *cestui que trust*, that is granted in the familiar cases to be found in the modern chancery reports of *Eng-, land*, where the inflamed interest of five per cent. is exact-. ed of executors or trustees, who abuse their trusts. And. we by no means go to the length to which *Raphael vs. Boehm*; has been carried, where five per cent. has been charged, and interest compounded at the same rate. If, in no case, compound interest is to be exacted, you uproot the settled, principle of equity, that all gains from the use of the trust fund shall inure to the benefit of the *cestui que trust;* and you present the strange anomaly in the law, that every shade of delinquency, corruption or misconduct of a trus-; tee, no matter how various its consequences. may be to the interests of the *cestui que trust*, is visited with the same mea-. sure of retribution. If in *England* and *New York*, where trustees are agents, serving gratuitously, it be deemed equit-able for some delinquencies to subject them to the payment

of compound interest, ought it to be looked on as a measure of severity, that the same rule should prevail in *Maryland*, where trustees, by way of commission, are liberally compensated for all the services they render? But this question of compound interest is not now, for the first time, submitted to the consideration of this tribunal. In *Darne vs. Catlett*, 6 *Harr. and Johns.* 482, where the decree of the Chancellor had given compound interest, this court said, that they could not "concur with the Chancellor in the allowance of compound interest. It is neither charged nor proved, that the executors had appropriated any of the bequest, or of the proceeds thereof, to their own use, or employed them in their own business, or in any way made any profit or gain from them, or in any manner subjected them to hazard." The necessary inference from which is, that if these facts had appeared, it would have been deemed a fit case for compound interest. The principle is still more distinctly affirmed in *Ringgold vs. Ringgold*, 1 *Harr. and Gill*, 79, 80, where this court thus express themselves: "Where the trustee is directed to invest funds, and to re-invest the dividends; or in other words, where the trust directs an accumulation, and the trustee has used the funds, compound interest will be allowed, as was done in the case of *Raphael vs. Boehm*, 11 *Ves.* 92, 108, 109, *and S. C.* 13 *Ves.* 407, 590—or where he has used the trust money, or employed it in his trade or business, he shall be charged in the same manner, as was decreed in *Schiefflin vs. Stewart and others*, 1 *Johns. Ch. R.* 620. The grounds of this allowance, as is apparent from these cases, is founded on the gain or presumed gain of the trustees, and that the *cestui que trust* may be indemnified by the efforts of the court in this way, to reach their profits or presumed profits." Upon principle, therefore, as well as authority, so far as the appeal of the appellant is concerned, we affirm the decree of the Chancellor.

On the appeal taken in this case by *Winder* and *wife*, we cannot sustain the decree of the Chancellor. It gives to

the trustee a commission of ten per cent., which is the full allowance that ought to have been made to him, had his conduct been marked by a strict performance of the duties he had assumed.   But this is very far from being the posture in which he appears before us.   It is the duty of a Court of Equity, in the distribution of its favors, to discriminate between those who violate their duty, and abuse their trust, and those who perform it with skill and fidelity.   To the latter a full commission is cheerfully bestowed; to the former half that amount is reluctantly granted. *Mr. Diffenderffer* having kept full and fair accounts of his receipts and expenditures, and in that respect faithfully discharged his duty as trustee, we do not think he has forfeited all claim to commissions, as he otherwise would have done.   We reverse, therefore, the decree of the Chancellor on the appeal by *Winder* and *wife,* on the ground that but five, instead of ten per cent. commission, ought to have been allowed to the trustee.

Upon this reversal, we are called on to exercise, as it were, an original equity-jurisdiction—to give that decree on the record before us, which the Chancellor ought to have given.   Whilst relieving the appellant, we must do justice to the appellee.   If, therefore, by the decision of the Chancery Court, any injustice has been done to him, in remodelling the decree we must extend to him that relief, on which his equities authorise him to insist.   That an error to the prejudice of the appellee, *John Diffenderffer,* has been inadvertently committed in Chancery, is manifest.   He has been decreed to pay two-thirds of the rents and profits of the trust fund to his children, from the 16th of January, 1815, till 1828, whereas their rights first accrued to them on the death of their mother, on the 30th of June, 1818.   If it be asked, why on this ground the decree of the Court of Chancery was not reversed on the appeal of *John Diffenderffer?* The answer is obvious; his not having made it a matter of exception to the auditor's statements, the act of

1825 precluded him from suggesting it as an error, on his appeal to this court.

That this court may pass a final decree in the cause, we appoint and direct the auditor of the Court of Chancery to state a new account, upon the basis of this opinion, that the expense of such audit be paid by the appellants; and that the same, as a part of their costs, on their appeal, be taxed by the clerk of this court.

DECREE REVERSED.

Buchanan, Ch. J., dissented from the opinion of the court, in relation to the liability of the appellant, (*Diffenderffer*) for compound interest.