Dalrymple *vs.* Gamble.

(Decided 16th December, 1887.)

AUGUSTINE J. DALRYMPLE, late administrator of the personal estate of WILLIAM H. DALRYMPLE *vs.* MARIE E. GAMBLE, and GEORGE H. GAMBLE, her husband.

*Practice in Orphans' Court—Administrator—His duties—Allowances to Administrator on Contest of Will—Costs—Interest on Funds in hands of Administrator—Commissions—Action of Orphans' Court not Reviewable on Appeal.*

Letters of administration were granted in this State to A. J. D. on the estate of his brother, who died in another State, and it was supposed intestate.  Subsequently a will was·discovered.  The establishment of said will was unsuccessfully resisted in the State of the decedent's domicil, by A. J. D. on behalf of himself, and the other next of kin, who gave him a power of attorney to act for them.  After the establishment of the will the letters granted to A. J. D. in this State were revoked, and new letters issued.  A. J. D. then stated an account of his partial administration of the estate before the revocation of his letters, which was passed by the Orphans' Court, *exparte*, without notice.  In this account he was allowed for his

Dalrymple *vs.* Gamble.

services, expenses, attorney's fees, and various costs incurred in the litigation over the will in the State where it was contested, as also ten per cent. commissions. Subsequently, on application, the order of approval was stricken out. HELD:

1st. That as this account was passed *ex parte*, the Orphans' Court, on exceptions specifically filed, had the power to review, within a reasonable time, its action, if found to have been improvident, and to reduce the rate of commissions, and rescind allowances erroneously made.

2nd. That said account improperly allowed the administrator his claim for personal services, and expenses, incident to the litigation over said will in the State where it was contested.

3rd. That the costs of such litigation were in no sense, costs of his administration or of duties pertaining to it.

4th. That the administrator was under no obligation to resist the probate of said will.

5th. That the administrator having admitted that he was paid by a Bank, a certain rate of interest on all the funds of the estate deposited by him in said Bank, he was accountable for interest at that rate, not only on the cash actually deposited, but also on that in his hands, which he ought to have deposited.

The fact that an administrator has paid the State tax on his commissions as allowed by the Orphans' Court, will not prevent the Court from afterwards reducing the rate of such commissions, on sufficient cause shown; and such action of the Orphans' Court is not reviewable on appeal.

APPEAL from the Orphans' Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, BRYAN, and MCSHERRY, J.

*Julian I. Alexander*, and *S. Teackle Wallis*, for the appellant.

*J. Southgate Lemmon*, and *Albert Ritchie*, for the appellees.

Dalrymple *vs.* Gamble.

The claim here is not for any debt due to the administrator by the deceased, and does not come under the provision for claims enforcible as of right against the estate; nor does it fall within the scope of section 250 of Article 93, of the Code, which permits the Orphans' Court to award costs in its discretion, in all cases of contest *originating in it*, even though sent to common law for trial.

This last section has been passed upon by this Court in the *Johns Will Cases*, 60 *Md.*, 228, and 62 *Md.*, 333, in the latter of which it was held that no appeal would lie from the exercise of that discretion.

These costs, however extraordinary they may be, were not "laid out in the recovery or security of any part" of William H. Dalrymple's estate. And, so, were not costs which the Orphans' Court had legal power to allow.

Section 5 of Article 93, enumerates the disbursements which the account may contain and which the Court may allow, while sections 119 and 120 make it his duty thereupon to distribute the residue and so close his account.

The costs must be his costs, as administrator—not those of himself and others jointly, and must be laid out by him as such, in the recovery or security of some part of the estate of his deceased; "not for the promotion of his own interest as heir-at-law or next of kin, but for the benefit of the estate." *Browne vs. Preston*, 38 *Md.*, 373, 380; *Townshend vs. Brooke*, 9 *Gill*, 90; *Gorton vs. Perkins*, 63 *Md.*, 589.

The costs under this section must be his sole costs, because a sole administrator can have no coadjutors in acting for his estate; and the very fact of any one else having to join him in the performance of any so-called official duty, shows the act so performed to be distinct from those imposed upon him by his office.

The practice in Maryland and elsewhere has been to cast the costs of controversies upon the losers. *McKim vs. Handy*, 4 *Md. Ch. Dec.*, 234; *Thomas vs. Frederick*

Dalrymple *vs.* Gamble.

*Co. School,* 9 *G. & J.,* 120 ; *Royer's Appeal,* 13 *Pa. State,* 572 ; *Stephen's Appeal,* 56 *Pa. State,* 413 ; *Mumper's Appeal,* 3 *W. & S.,* 441.

The pretension that the Orphans' Court was precluded from changing the rate of commission or from expunging any item by reason of the order of December 2nd, 1882, ratifying the first account, is untenable. That order was passed *ex parte* and concluded nobody. *Jenkins vs. Whyte,* 62 *Md.,* 435 ; *Smith vs. Stockbridge,* 39 *Md.,* 645 ; *Re Estate of Stratton,* 46 *Md.,* 551, 554.

In the last case the change of commissions was expressly placed on the right to correct errors in orders passed *ex parte.*

That Orphans' Courts should charge interest on money not distributed in proper time, or used improperly, see *Gwynn vs. Dorsey,* 4 *G. & J.,* 318, 340, 342, 343.

This appeal is not for the appellant's protection as administrator, but in assertion of his private claim against the estate, and the costs of it should be borne by him, and not by the residuary legatee, against whose interest it was made. *Dorsey vs. Dorsey,* 10 *Md.,* 477 ; *Billingslea vs. Henry,* 20 *Md.,* 187.

IRVING, J., delivered the opinion of the Court.

The facts essential to be known in this case, for the intelligent appreciation of the questions raised in it, and to be disposed of by us, are as follows : Edwin A. Dalrymple died in Baltimore on the 30th of October, 1881, intestate, unmarried and without issue, leaving a considerable estate in Maryland, to which his two brothers and two sisters became entitled. Dr. Augustine J. Dalrymple, the appellant in this case, took out letters on the estate within less than a month. William H. Dalrymple, one of Edwin's surviving brothers died in California. Immediately on receiving information of his death, this appellant took out letters on his estate in Maryland.

After taking out such letters information came to Dr. Dalrymple, the administrator, that his brother William was alleged not to have died intestate, but was alleged to have left a will in favor of one Marie E. Hatch; and that this legatee and devisee claimed to be the widow of the deceased William H. Dalrymple. Dr. Dalrymple also received information leading him to believe that this Marie E. Hatch was not the wife of his brother as she claimed to be; and that the alleged will was fraudulent; and if executed by his brother was so executed when he was incompetent to execute it, and unable to resist the influence exerted over him by this Mrs. Hatch, who instead of being his wife was believed to be only his mistress. Fully impressed with this view, (and justifiably so from the information he had received) he took steps to resist the will and the claims of this woman, in the proper Courts of California. This he did in his own name and that of his sisters who were equally interested with him, and who gave him a power of attorney to act for them. That litigation resulted in the establishment of the will in the lower Court; and on appeal to the Supreme Court of the State of California, the decision of the lower Court was affirmed. Pending this litigation in California proceedings were instituted here to revoke his letters in the interest of the legatee under the California will; but the same was not pressed to final disposition until the litigation in California was ended; then this appellant's letters were revoked, and new letters *c. t. a.* were granted to him and to J. S. Lemmon of the counsel of the appellee in this case.

Upon appeal to this Court the action of the Orphans' Court in this regard was affirmed. This being done, the appellant proceeded to pass an account of his partial administration of the estate, before the revocation of his letters, preliminary to turning over the estate to the new administrators *c. t. a.* In that account he claimed allowance for his services, expenses, attorney's fees and various

Dalrymple *vs.* Gamble.

costs incurred in the litigation over the will in California, and the Orphans' Court allowed the claim. He was also allowed ten per cent. commissions. This account was passed and allowed on the 2nd December, 1882, and on the 27th of the same month, on application, the order of approval was stricken out, and the same was set for hearing on exceptions upon the 15th of January succeeding. The account had been passed without notice and was entirely *ex parte*, and it was entirely within the power of the Orphans' Court to review their action alleged to have been improvident, and to rescind allowances made, if found to have been erroneous, within a reasonable time, which this certainly was, the fund being still under their control and undisposed of. *Scott vs. Fox*, 14 *Md.*, 388 ; *Re Estate of Stratton,* 46 *Md.,* 559 ; *Bantz, Ex'r vs. Bantz, et al.*, 52 *Md.*, 686 ; *Wilson vs. McCarty*, 55 *Md.*, 281. Exceptions were specifically filed, and after hearing the Court disallowed the claim of the administrator for personal services, and expenses incident to the litigation over the will in California ; reduced the allowance of commissions from ten per cent. to seven per cent.; and directed that the administrator charge himself with ($2\frac{1}{2}$) two and one-half per cent. interest on all cash funds as allowed him by the bank in which he made his deposits. From this order of the Orphans' Court the administrator appealed.

Three questions are presented—viz., 1st, as to the disallowance of the claim for services and expenses of the California ligitation—2nd, as to the commissions allowed, and 3rd, as to the interest charged on the cash in the hands of the administrator.

The counsel for the appellant have presented his claim in the strongest possible aspect, and have made most eloquent arguments in support of their contention, based on the entire *bona fides* of the appellant in the litigation he unsuccessfully prosecuted in California, of which there is no doubt; and the powerful reasons he had for the

belief he entertained when he took his proceeding, and for questioning the correctness of the jury's finding—which, however, he does not now contend was otherwise than binding on him. But we have been unable to see in any of the suggestions made, or authorities cited, any good ground for questioning the correctness of the action of the Orphans' Court.

The English and American authorities relied on in support of the appellant's contention can have no controlling influence upon a question which depends in this State, upon statutory powers of the Orphans' Court, and the statutory duties of an administrator; and the authorities cited in this State do not reach the question here presented. The case of *Edwards vs. Bruce*, 8 *Md.*, 387, and the other cases relied on, are instances where the power of the Orphans' Court to allow the costs was undeniable. In all cases of plenary proceedings before them, under sections 249 and 250 of the 93d Article of the Code, their power to award costs in their discretion is unquestionable. It is statutory. If this proceeding was in *equity, that Court* would have full power over the question of costs. But presented as it is, it must be disposed of in accordance with the law applicable to the Court in which the proceeding was had.

To allow this administrator for personal services, for expenses of travel, *et cœtera*, and for costs of the litigation over a will in another State, to prevent its being established, would be stretching the discretion and power of the Orphans' Court beyond the statute, or any legitimate inference drawn from it, in any decision yet made. The Courts of the State, where the litigation was, imposed the costs on the appellant and his co-plaintiffs; and we find no warrant anywhere, for reimbursing him from the estate in his hands as administrator in this State; which administration was, in fact, revoked as the result of the establishment of the will. They were, in no sense, costs of his

Dalrymple vs. Gamble.

administration, or of duties pertaining to it. *Young, Adm'x of Young, Ex parte,* 8 *Gill,* 285, relied on by appellant does not justify this allowance. There the rightful administrator was allowed his costs in *successfully establishing* his right to administer, against persons not entitled to the trust. The Court did say the allowance was proper in analogy to the practice of allowing an executor for costs in defending a caveat to the will. As his costs were given him by statute, the analogy is certainly not striking, and the allowance need not rest on it. Those costs were legitimate administration costs. Persons not entitled were endeavoring to get the control and management of the estate, and the costs of successfully resisting such pretensions were allowed out of the estate. Here, an administrator was appointed on the supposition there was no will. A will is discovered and his authority must be revoked if it be probated. He, not as administrator and in defence of his right as administrator, but, with others as distributees, and who were all the distributees if there be no valid will, *unsuccessfully* resisted the will. The analogy utterly fails. The interest of the estate was in no degree promoted by his action, but if his claim be allowed, was seriously injured thereby. He made an unsuccessful effort in *his own interest,* and not in that of the estate, and there seems to us no reason why the estate should bear the costs of such effort in *his own interest* which failed.

The only possibly plausible ground upon which the contention for the allowance could be placed is, that, the appellant was, in good faith, and with really probable grounds for supposing he would succeed, discharging an imperative duty devolving upon him as administrator in resisting the will in the California Courts. This argument was strenuously pressed but will not stand the test of close examination. It is supposed to rest entirely upon the fifth clause of the fifth section of Article 93 of the Code of Public Laws. In providing what allowances are to be made

an executor or administrator in his accounts, that fifth clause says: and for allowance "for costs and extraordinary expenses (*not personal*) which the Court may think proper to allow, laid out in the recovery or security of any part of the estate." Here is authority given the Orphans' Court to make such allowance as it *thinks proper* for costs incurred in the effort to *recover* or *secure any part* of the estate. But even this authority is modified to some extent by section 105 of the same Article 93. By that section the *right* of the executor or administrator to allowance in such case for the costs of prosecution or defence of such action for or against the estate, is made to depend on the certificate of the Court in which the proceeding was had, "that there were probable grounds for instituting, prosecuting or defending the action in which judgment or decree shall have been given against them."

Now, assuming that these sections contemplated such proceeding in either a home or foreign jurisdiction, and assuming that such proceeding as was instituted in California by this appellant to resist the will there set up, could be regarded as falling within the meaning and intention of the language of the statute, "for the recovery or security of any part of the estate," the administrator was not fortified with the certificate of the Court such as sec. 105 of Art. 93 requires. But it is hard to perceive in what sense that proceeding was for the recovery, security or preservation of any part of the estate. The *existence* of the estate and the right of Wm. H. Dalrymple's proper representatives to it, was in no way questioned. The only possible controversy was to whom it should go—to the alleged devisee and legatee, or to the Maryland brother and sisters. It was purely one of distributive right. The real and personal estate there, by statements in the proceedings, was not claimed to exceed eleven hundred dollars; and only one hundred dollars of that in any Court would be transmissible here for distribution here, regard-

ing that as an ancillary administration to this, instead of this being ancillary to the one in the place of residence and will. The proceeding which was instituted was not justifiable for the recovery of that small amount. It was not ordered by the Orphans' Court, nor has it been contended that the Orphans' Court could have ordered it.

We are unable to see how or where the duty devolved on this appellant as administrator upon the estate here, to institute the proceedings in California, for the costs of which, including personal services, he is now claiming allowance. Unless such duty did rest on him, clearly the Orphans' Court had no authority to allow him his claim. His bond required him in its statutory language "well and truly to perform the office of administrator of Wm. H. Dalrymple, deceased, according to law, and shall in all respects discharge the duties required of him by law as administrator as aforesaid, without any injury or damage to any person interested in the faithful performance of said office." By no possible straining can this bond be construed to impose a duty on the administrator, to resist the probate of a will of his alleged intestate in this or any other State. An executor, after a will is probated, is required in this State to defend the will, if the same be caveated. Compton vs. Barnes, 4 Gill, 55; Townshend vs. Brooke, 9 Gill, 90. And he is allowed his costs for so doing, no matter what the result; for it is held to be his duty to defend the will confirming his authority as executor. The statute gives him his costs in such case. Townshend vs. Brooke, 9 Gill, 90. But if the executor had an interest adverse to the will, and before probate, united with others in contesting its probate, and letters pendente lite were granted him, would it be contended that, in such case, he would be entitled in his accounts as administrator pendente lite, to allowance for costs for unsuccessfully resisting the will? Could it be claimed either in virtue of the statute or by analogy to it? Clearly it

could not be with any plausibility even in the claim, and if it could not we are unable to perceive the distinction between such case and the one under consideration.

If a person not named as executor had taken out letters *pendente lite*, would it have become his duty as such administrator *pendente lite*, to interfere and resist the probate of the will? If in that case or in the case under review, it was his duty, then neglect to discharge that duty would have rendered him answerable on his bond as administrator. Duty and liability in such case are correlative. Would a suit on this appellant's bond have been maintainable against him had he neglected to do what he did in respect to contesting the will? We think it very clear it could not have been, for there is no language in the bond specifying such duty, and we find nothing in the statute binding him to any such course; nor do we know of any obtaining practice from which it could be inferred as his duty. The action taken was purely *personal* in its nature, and not *fiduciary* in character. It was personal in *name* and was conducted with others jointly interested, who had agreed to share proportionally the expenses of the proccedings. If successful *it could only bring benefit to the plaintiffs therein;* and it brought nothing, and secured nothing to the estate as such. The Orphans' Court could not, on anybody's petition, have ordered the administrator to take such proceedings, because the interest of the estate as such was not involved. If the Court could not order it to be done, how could he voluntarily engage in it at the charge of the estate? Suppose the estate in Maryland had only been seven thousand dollars, then on the theory of the appellant of his right to allowance of the claim preferred, the whole estate would more than be exhausted; and very anomalously, and the person who successfully maintained a right to it under the will, would be denied the fruits of her title, and be made to pay the expenses of defending her own rights, and also those of the per-

sons whom the Courts trying the case decided had wrong-
fully interfered to defeat the right which was established.
From what we have said it is apparent that we think the
Court acted rightly in reviewing their action in the first
instance, and in striking out the allowance which was first
made. In that account, and in that Court, no matter how
*bona fide* the appellant had been in his conduct, in respect
to the litigation for which allowance was claimed, such
allowance had no proper place, and ought not to be ac-
corded.

The order of the Orphans' Court charging the appel-
lant with two and one-half per cent. interest on the cash
received, does not seem to us unreasonable or improper.
It was but ordering him to account at a rate of interest
which he admitted the bank paid him on all the funds of
the estate deposited in it. He ought not to be permitted to
derive benefit from it personally. It belonged to the
estate. And though it be charging him with interest on
funds not actually in bank, it ought to have been there
and not to have been used for the purposes it is shown to
have been used for. He had no order of the Court to so
use it, or to retain it for any contingency. We see no
wrong in the requirement which was made of him in that
regard.

Commissions were first allowed at the rate of ten per
centum. When the account was reviewed, the allowance
of commissions was stricken down and fixed at seven *per
centum.* It is contended that the rate having been fixed
at ten per cent., the administrator at once accounted with
the State and paid tax thereon at that rate, and that
the Court could not afterwards alter it. The Court hav-
ing full power for good cause appearing to them to review
its action, (*Re Estate of Stratton*, 46 *Md.*, 551,) did so,
and that question is not reviewable in this Court. *Handy
vs. Collins*, 60 *Md.*, 229. The question of commissions is
entirely in the discretion of the Orphans' Court, except

so far as it is limited by law, and no question is presented of the Court's transcending that limit in respect to allowance. If the appellant has paid the State too much he must take such steps as are to open to him to get it refunded. We find no error and the order of the Orphans' Court will be affirmed.

*Affirmed and remanded.*

(Decided 16th December, 1887.)