A.  FREEBORN  BROWN  et  al.,  Administrators,  *v.*
MILLARD  F.  TYDINGS,  Surviving  Admin-
istrator  Pendente  Lite.

*Executors and Administrators—Making Use of Trust Funds—*
*Charge of Compound Interest—Filing Inventory—*
*Allowance of Commissions.*

The account of a surviving administrator *pendente lite* is
not open to exception because he charged himself with the
estate coming into his hands at the death of his co-adminis-
trator, instead of with that received by him at the time of his
original appointment, there being also an account of both ad-
ministrators, and both together giving an accounting for the
full period of his incumbency.                    p. 24

Successive administrators of a single estate should each file
an inventory.                    p. 25

The failure of an administrator to file an inventory for him-
self, while it renders him delinquent under the law, subject to
revocation of his letters under Code, art. 93, sec. 225, and
not in a position to demand commissions, does not necessarily
prevent the allowance of commissions after the estate has been
otherwise administered upon fully, and to the approval of the
orphans' court.                    p. 25

The allowance or refusal of commissions to an administrator
by reason of his failure to file an inventory is not an appealable
order, in the absence at least of some injury resulting there-
from.                    p. 25

Objections to the allowance of commissions to an adminis-
trator, on the ground of his wrongful conduct of the adminis-
tration and of the little work of administration to be done after
his appointment, are referred to the discretion of the orphans'
court, and its decision in the exercise of that discretion is not
reviewable.                    p. 25

It was within the discretion of the orphans' court, on the
hearing of exceptions to a surviving administrator's account,

whether to grant a postponement in order to obtain witnesses to prove what use the administrator had made of money withdrawn by him from the administrators' account.              p. 27

Where an administrator or other fiduciary has withdrawn money from the trust fund for his own use, and does not disclose what use he has made thereof nor the amount of profits from such use, it is proper to charge him with compound interest on the money so withdrawn.              pp. 27-29

That the fiduciary says that he did not make any profits on the money so withdrawn is not sufficient to relieve him from the payment of compound interest, but more facts should be disclosed, and submitted for checking up.              p. 29

*Decided June 30th, 1925.*

Appeal from the Orphans' Court for Harford County.

Exceptions by A. Freeborn Brown and Eldridge Hood Young, administrators of Sarah Elizabeth Wareham, deceased, to the account of Millard F. Tydings, surviving administrator *pendente lite* of said deceased. From an order overruling the exceptions and ratifying the account, the said exceptants appeal. Reversed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*Eldridge Hood Young* and *John S. Young,* for the appellants.

*Shirley Carter,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

P. Leslie Hopper was appointed administrator of Sarah Elizabeth Wareham on March 30th, 1916, shortly after her death. On April 17th, 1916, a paper purporting to be a will of this decedent was offered for probate, a caveat was filed and issues were sent to the circuit court for trial. On

June 20th, 1916, P. Leslie Hopper, as administrator, filed an inventory showing assets of the estate in his hands to the total value of $6,112.75, consisting of certain goods and chattels, and certain railroad stocks and bonds.

On September 5th, 1916, the letters of administration previously issued to P. Leslie Hopper were revoked, and he and Millard F. Tydings were appointed administrators *pendente lite.* P. Leslie Hopper died on February 13th, 1917. The administrators *pendente lite* filed no further inventory, but an account was filed on their behalf after the appointment of the permanent administrators, showing receipts of income from the 13th of September, 1916, which was shortly after their appointment. Millard F. Tydings filed a final account on his own behalf as surviving administrator *pendente lite,* in which he charged himself with assets of the decedent coming into his hands at the death of P. Leslie Hopper, the co-administrator *pendente lite.* Exceptions to this latter account were filed by the permanent administrators.

The first exception objects to the failure of the accountant to charge himself with assets received at the time of his original appointment as co-administrator with P. Leslie Hopper, rather than "with the estate coming to his hands at the death of P. Leslie Hopper." This exception we think not well taken, in view of the fact that there were two accounts, one of both administrators and one of the surviving administrator alone, and both together gave an accounting for the full period of the appellee's incumbency.

The second and third exceptions object to the allowance of commissions at six per cent.; first, because the appellee failed to file any inventory of the assets which he received from his predecessor in the office, and, second, generally, that the appellee is not entitled to six per cent. commissions. It is argued on behalf of the appellee, as we understand it, that the inventory filed by the first administrator might be taken as sufficient for all the subsequent administrators; but we do not agree in this. Section 211 of article 93 of the

Code is broad in terms, requiring, as it does, merely that when letters of administration are issued an inventory shall be filed in order that all persons interested in the personal estate may have an opportunity of knowing the amount of it; and it may be argued logically that the requirement is met by one inventory of all the assets, when there are no subsequent changes of which the persons interested might be informed. But the requirement has not been so construed in practice, so far as we are informed; careful administration would seem to require such a statement by each officer of the assets received from his predecessor, and the special provision in section 224 of article 93, that an administrator who succeeds a collector duly appointed shall either return a new inventory in the place of the collector's inventory or an acknowledgment in writing that he has received from the collector the article contained in the first inventory or consent to be answerable for the same, seems to contemplate a general practice of filing successive inventories for successive administrators. But, in our opinion, the failure of an administrator to file an inventory for himself, while it renders him delinquent under the law, subject to revocation of his letters under section 225 of article 93, and not in a position to demand commissions, does not necessarily prevent the allowance of commissions after the estate has been otherwise administered upon fully, and to the approval of the orphans' court. The allowance or refusal without an inventory would not be an appealable order, in the absence, at least, of some injury which does not appear to have resulted here. The allowance of commissions is objected to on the further ground of wrongful conduct of the administration by the appellee, and on the ground that there was little work of administration to be done after his appointment. But objections on such grounds as these are referred to the discretion of the orphans' court, and its decision in the exercise of that discretion is not reviewable by this Court. Article 93, section 5. *In re Watts,* 108 Md. 698; *St. Mary's Orphan Asylum v. Hankey,* 137 Md. 569, 572.

The last and chief ground of exception to the account we find well taken. The appellee drew a total of nineteen hundred dollars. from the funds deposited to the account of the administrators, by four checks to his own personal order, for his own use. One withdrawal, of one hundred dollars, was made after the permanent administrators, now appellants, had been appointed to succeed the appellee, and the other amounts were withdrawn at intervals during the five years preceding. The principal amounts were paid back to the estate, in part before the appointment of the permanent administrators, and in still greater part afterwards. And to those amounts the appellee added interest at the rates of three, three and one-half and four per cent., the rates which, as he testified, would have been allowed by the bank if the funds had remained on deposit. The appellants contend that the appellee should pay the estate at least six per cent., and that he should be required to pay, in addition, any profits which may have been made by the use of the trust funds.

The appellee was summoned to produce at the hearing on the exceptions the checks by which he drew the amounts in question, but testified that he could not find them, and did not keep them with the checks or vouchers that had to do with the estate, that the sums so withdrawn had been deposited in his personal account with either the First National Bank of Havre de Grace or Lanahan's Bank at Baltimore, or. kept in his safe at his residence. He said also that he did not make anything out of the withdrawals. After an adjournment of the hearing the appellee testified. that he was still unable to find any of the checks he was directed to look for, and did not know what had become of them. The appellants requested a further postponement in order that they might produce other witnesses to prove what use the appellee had made of the money he had checked out of the administrators' bank account, but this was refused, and the account was finally ratified without change except for the reduction of one per cent. in the rate of commissions.

The refusal of the orphans' court to grant the appellants time for procuring other witnesses, after the appellee had failed to find the checks sought for, is not appealable. It is an order within the discretion of the trial court. *Hill v. Reifsnider*, 39 Md. 429. It is true that the appellants appear to have acted with all diligence possible in their effort to obtain the information sought, but they seem to have had no certain sources of further information, and it does not appear that the appellees were prevented from presenting at the second hearing such witnesses as they hoped for. We see no ground for this Court's interfering with the ruling on this point.

But the payment of less than six per cent. interest on the money withdrawn is not sufficient in any event. Indeed, on the facts just stated there arises a question whether six per cent. is sufficient. It has been the rule of the courts of this State, since the decision in *Ringgold v. Ringgold,* 1 H. & G. 12, that where information as to possible profits is lacking, a fiduciary who withdraws trust funds for his own profit may be charged compound interest. "The grounds of this allowance, as is apparent from these cases (cited) is founded on the gain or presumed gain of the trustees and that the *cestui que trust* may be indemnified by the efforts of the court in this way, to reach their profits or presumed profits." *Ringgold v. Ringgold, supra.* Chancellor Kent, in *Schieffelin v. Stewart*, 1 Johns, Ch. 620, the leading case on the subject in this country; and one which was followed in *Ringgold v. Ringgold, supra,* speaking of an administrator who had long omitted either to distribute the money in his hands or to make it productive, and who had been charged compound interest on it by the master, said, "He did neither, but employed the money in his own business, or trade, or in making large loans for his own benefit; and as he has not disclosed (as he might have done to the master) what were the profits of the assets so employed, it appears to me, as well on principle as on authority, that he is justly chargeable with the interest contained in the report. The only way to

avoid this conclusion, was by fairly disclosing what use he had made of the money. In the ordinary case, between debtor and creditor, compound interest is not recoverable. This point I had occasion to examine fully in the case of *State of Connecticut v. Jackson* (1 Johns, Ch. 13). But here a charge of such interest becomes indispensable to enable us to reach the gain or profit which the plaintiff ought to refund." And see 2 *Kent's Commentaries,* page 231, with the note of Oliver Wendell Holmes, Jr.; *Diffenderffer v. Winder,* 3 G. & J. 311, 346; *Dennis v. Dennis,* 15 Md. 73, 146; *Smith v. Darby,* 39 Md. 268, 280; *Hooper v. Hooper,* 81 Md. 155, 177; 3 *Pomeroy, Equity Jurisprudence,* sec. 1076; 2 *Story, Equity Jurisprudence* (14th ed.), sec. 420. The case of *Dalrymple v. Gamble,* 68 Md. 156, 167, relied upon by the appellee, was not one of funds withdrawn for a private use not fully disclosed, and seems not in point here.

The allowance of compound interest is, therefore, a substitute for the appropriation of actual profits made, or presumed to have been made, by the use of the trust funds, when lack of information from the fiduciary prevents determination of the amount to be appropriated as profits. It is not that profits equal to compound interest are shown; an argument that so much profits must be proved before compound interest might be allowed, and that mere silence of the trustee was no foundation for the allowance, was made in *Diffenderffer v. Winder,* 3 G. & J. 311, 332, but was rejected. The allowance is made in the absence of proof, and, as Chancellor Kent said (*Schieffelin v. Stewart, supra*), can be avoided by the fiduciary only by fairly disclosing the use made of the money. In the cases just cited the courts had before them evidence that the trust funds withdrawn had been used in trade; but the exact dealings and the existence or the amount of profits were not known. Here, because of lack of information from the fiduciary, it is not known whether he used the money in an effort to make profits. Of course, it is to be presumed that he deliberately withdrew the funds for some advantages of his own, and the statement he makes as to the .

places where he may have deposited the checks suggests to the appellants that he may have been buying securities. As long as the information is not forthcoming this is speculation only. But the expedient of charging compound interest as a substitute being resorted to, as has been said, because lack of information from the fiduciary as to the existence or the amount of profits renders the beneficiaries and the court unable to determine what, if any, profits the trust estate is entitled to, it would seem that the resort to it could not be limited to those cases only in which the court has knowledge that the funds were used in trade. It must be available just as well in those cases in which the information given falls short of that, and leaves the nature of the use unknown, or, otherwise, the remedy might be left dependent upon the extent of the silence maintained by the fiduciary. The same exigency would seem to exist in each situation, and in one as well as in the other to require that the court follow a practice which would avoid permitting the rights of beneficiaries to be defeated by lack of information from the fiduciaries. In this case, the fiduciary says that he did not make anything on the withdrawals, but that is not a sufficient answer. More facts should be disclosed, and submitted for checking up, or the court must require payment of compound interest. It is not entirely clear what the appellee's statement means. Perhaps it does not take into consideration the principle that a fiduciary is chargeable with all gains from trust funds used by him, but must himself stand all losses. 2 *Story, Equity Jurisprudence* (14th ed.), sec. 620. And, in any event, it does not meet the burden which a fiduciary places upon himself by using trust funds for his own purposes.

Our conclusion is that the order ratifying the account must be reversed, and the appellee required to charge himself with compound interest on the amounts withdrawn by him.

*Order ratifying account reversed, and case remanded for further proceedings in accordance with this opinion, appellee to pay costs.*

*On motion for modification or reargument.*

In the foregoing opinion it is stated that an account filed in the proceedings below, on behalf of Millard F. Tydings and Leslie Hopper, Administrators, appeared to cover the dealings of the joint administrators up to the time of the death of P. Leslie Hopper, when Millard F. Tydings became sole administrator, and from which time he accounted separately. In the motion now filed it is represented to the court that the account to which the Court had reference was not one filed in the proceedings, and that there is still no account of the joint administration. In view of this representation, the directions given in the opinion are modified to this extent; that the Court, if it finds the appellee has not filed an account of the joint administration of himself and P. Leslie Hopper, Administrators, shall require him to file one.

*The motion for reargument is overruled.*

*Filed October 7th, 1925.*