ANASTASSIA TSARACKLIS ET AL. *v.* GREGORY CHARACKLIS, ADMINISTRATOR.

[Nos. 49, 63, October Term, 1938.]

*Decided January 15th, 1939.*

The causes were argued before BOND, C, J., PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Paul R. Hassencamp,* with whom was *Herbert C. Fooks* on the brief, for the appellants.

*Benjamin Michaelson* and *Emanuel Klawans,* with whom was *Winson G. Gott, Jr.,* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

Parents resident in Greece of a decedent resident in Maryland have filed petitions, in the administration proceedings on the son's estate, to remedy an alleged waste or spoliation of the assets by another son, acting as administrator. They appeal from a dismissal of one petition for an order to open the grave of the decedent to test charges for burial, especially a charge for a steel vault, which, it has been reported to them, was not in fact used; and appeal from a single order of the Orphan's Court on two petitions, one to require the administrator

to appear and in a plenary proceeding justify specified payments shown on his administration accounts, and the other to revoke his letters of administration and to require a new bond sufficient to cover his liability for additional assets discovered after the letters had been issued. The order on these latter petitions reduced the allowance for one claim, ordered that a counsel fee charged be paid out of the administrator's commissions, and dismissed the petition so far as it prayed a revocation of the letters. There is no important dispute of fact, other than that concerning the materials supplied for the burial.

Victor Characklis died without issue on February 3rd, 1937. He had kept a small restaurant in Annapolis, and in his lifetime was generally regarded as poor; and after his death the administration proceeded on an assumption that his estate would amount to only $502.50. Payment of the expenses of medical and hospital care, and other debts, was at first, for want of apparent assets, undertaken by the surviving brother, and debts of the decedent's lifetime were settled for half their amounts. The purchase and equipment of a large cemetery lot was undertaken by the brother and an uncle, Steve Foundas. But the discovery in the same month, on or about February 23rd, 1937, of a savings account of the decedent's, containing $6026.37, led the administrator and the uncle to turn to the estate for the payment not only of the decedent's debts and burial expenses, but of outlays for relatives as well. And so lavish were the outlays that the administrator's first account showed deductions from the total of $6528.87, which would leave $651.31 for distribution to the parents.

The undertaker's charges shown amounted to $830.50, and the expense had been incurred without an order of court. Code, art. 93, sec. 5. Obviously, the amount was excessive by ordinary standards, and placed a heavy burden of proof on the undertaker and the administrator. And on behalf of the parents it is alleged that when a foundation was laid for a memorial stone over the grave

only a wooden enclosure was found, although allowance was claimed in the administrator's account for the cost of a steel vault. But whatever the fact may be, this court agrees with the Orphans' Court that it lacks authority in law to order the grave opened for inspection. That court is one of specified powers, and this power is not within those specified. Code, art. 93, sec. 271; *Baldwin v. Hopkins,* 171 Md. 97, 100, 187 A. 884. The appellants urge that it is a power necessarily included in that to examine administration accounts and to order their correction. Code, art. 93, sec. 245; *Dalrymple v. Gamble,* 68 Md. 156, 161, 11 A. 718. But a power to order investigations to be made out of court to discover facts has generally been regarded as extraordinary, and not within the judicial functions. The fact that statutory authority has been necessary for the exercise of a similar power by common law courts illustrates this judicial limitation. Code, art. 75, sec. 104; *Arnold v. Green,* 95 Md. 217, 52 A. 673. It cannot be implied in the general powers of the orphans' courts. But if those courts had the power, the order refusing the inspection would not be a final order; it would be interlocutory merely, and could not be reviewed on appeal until after final determination of any contest on the undertaker's bill. *Magraw v. Munnikhuysen,* 35 Md. 291; *Hill v. Pinder,* 150 Md. 397, 409, 133 A. 134. The first appeal must be dismissed.

Maladministration in several respects is alleged as ground for revocation of the letters of administration, and, as stated, many of the facts on which the charges are made are not in dispute. The administrator, although, as early as February 23rd, 1937, he had in his hands money belonging to the decedent's creditors amply sufficient to pay them in full, continued making compromise settlements with them through the year, paying in all only $390.85 in settlement of $811.70 in debts. No cash inventory showing the existence of the bank account was filed meanwhile, or until January 26th, 1938. Code, art. 93, sec. 223. The remaining portions of the debts were subsequently paid, when exceptions were filed to the

first administration account. Without any order of court for it, a total of $2138.50 out of the $6528.87 was paid for the burial. In addition to payment of the undertaker's bill of $830.50, the assets were used to pay bills incurred by the uncle, Foundas, including $345 for a cemetery lot, $300 for a stone wall surrounding it, $140 for chains around the lot, and $350 for a monument. Foundas appears to have incurred most, at least, of these charges, expecting to pay them himself. The deed for the lot conveyed it to him, and in the administrator's first account the amounts are listed as to be repaid to him. No vouchers were produced for some of the large items. The lot was sufficient in size for thirty graves, and the stone coping surrounding it is marked, "Foundas Brothers—Characklis Brothers." The decedent's grave occupies a corner. Foundas, according to the account, claims repayment, also, of $150 for services of two ministers at the funeral. In the order passed on the last two petitions mentioned, Foundas was required to refund to the administrator half of his charges for buying and equipping the cemetery lot, and for the burial, or $469.75, but the sufficiency of the reduction is contested.

There is evidence tending to prove that the stock and fixtures of the decedent's business, although reported sold to a vendee named Pappas, was sold to the administrator, possibly with Pappas as an associate, at a price below that of the appraisal. *Schockett v. Tublin,* 170 Md. 117, 126, 183 A. 521. Interest during the eleven months that the administrator had the amount of the bank account in his hands, without filing a cash inventory showing it, is now claimed from him. A transcript of the administrator's bank account as the fiduciary fails to show a deposit of $2366.37 of the $6026.37. And it is contended that a counsel fee charged in the administration account was, on the testimony of counsel, shown to be excessive.

Other alleged departures from correct practice and the requirements of the law need not be recited at this point. There might be properly chargeable to the estate the cost

34

of so much space in the cemetery as might be purchased for the one burial, and, instead, the assets were laid out to provide for many persons still living. If the intervention of the parents had not stopped it, the undertaker would have been paid the full $830.50, and half the money belonging to the decedent's creditors would have been kept from them. Whether this mismanagement be called fraudulent or not is immaterial. "The Orphan's Court, by our act, is given power 'to administer justice in all matters relative to the affairs of deceased persons.' Section 230 [now section 243], article 93. Under this section that court would have the power, if they thought justice to the affairs of the deceased required it, to revoke and reappoint." *Dalrymple v. Gamble,* 66 Md. 298, 305, 7 A. 683, 685, 8 A. 468; *Daugherty v Daugherty,* 131 Md. 489, 493, 102 A. 749. And in the opinion of this court, the disregard by this administrator of the duties committed to him marks him as unfitted for the accomplishment of the court's purpose under the law, and the letters issued to him should be revoked and a new administrator substituted in his place. Especially is this true in view of the fact that assets of the estate may have to be recovered from relatives of the present administrator, and perhaps from himself.

While the orders appealed from refer only to the petitions filed, in distinction to the exceptions to the administrator's accounts, the Orphans' Court did act upon the exceptions, we take it, in ordering the reduction in the charges for buying and equipping the cemetery lot, and the appellants urge this court to pass on charges not mentioned in the order, and the exceptions to which were therefore presumably overruled. It is argued that the expenses of medical treatment and burial should be borne by the administrator personally because undertaken by him when it was thought the estate would be too small to meet them, but in this the court does not agree, for the expenses were primarily those of the estate, and should be paid by the estate, in the proper amounts. And there was nothing unlawful in the payment of claims which

might have been barred by the statute of limitations. An administrator might waive the bar. Code, art. 93, sec. 100; *Gordon v. Smith,* 53 Md. 550, 559; *Dunnigan v. Cummings,* 115 Md. 289, 297, 80 A. 922.

A question has arisen of the propriety of allowing any commissions at all for what has been done by the removed administrator. The measure of commissions, within statutory limits, rests regularly in the discretion of the Orphans' Court. *Newton v. Johnson,* 173 Md. 166, 168, 169, 195 A. 312. But these limits have been fixed for completed administrations, and there is no minimum allowance fixed for partial administration; the amount remains within the discretion of the Orphans' Court with only the merits of the work done to serve as their guide. In this instance the lower court has not yet had the problem of compensating partial administration before it; the removal now required will present that problem for the first time. Meanwhile, this court should not anticipate the decision.

The allowance of a fee for counsel to the removed administrator, heretofore ordered to be paid out of the administrator's commissions, is now reopened as a consequence of the reopening of the question of commissions. The propriety of this fee is disputed.

Other items excepted to, so far as they may have been acted upon at all, have been considered without hearing the persons paid or benefited, and giving them an opportunity to meet the burden of proof upon them. *Stump v. Stump,* 91 Md. 699, 705, 47 A. 1034; *Badders v. O'Brien,* 114 Md. 451, 454, 79 A. 917. This being true, the court should not in this proceeding undertake the adjudication of them, especially as a new administrator is to be appointed to contest claims upon such evidence as may then appear. The administrator should pay interest upon so much of the money of the estate as may appear to have been withheld by him to his own account. *Brown v. Tydings,* 149 Md. 22, 25, 130 A. 337; *Dalrymple v. Gamble,* 68 Md. 156, 167, 11 A. 718.

Requiring an additional bond from a removed administrator would not be practicable, and need not be considered.

> *Appeal in No. 49 dismissed, and order appealed from in No. 63 reversed and cause remanded for further proceedings, with costs to be paid by Gregory Characklis personally.*