RIDDLEBERGER ET AL. *v.* GOELLER, Executor
of the Estate of Mary A. Phillips

[No. 3, September Term, 1971.]

*Decided October 13, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Thomas C. Beach, III,* with whom were *John H. Somerville* and *Clapp, Somerville, Black & Honemann* on the brief, for appellants.

*Ronald J. Kearns* for appellee.

SMITH, J., delivered the opinion of the Court.

In this case appellants, three of the beneficiaries of the estate of Mary A. Phillips, deceased, challenged the amount of commissions allowed to Frederick S. Goeller (Goeller) as executor and the amount of the fee allowed to the attorney for the executor, Ronald J. Kearns (Kearns). We shall sustain the order relative to executor's commissions and modify the order relative to attorney's fees.

The will of Mrs. Phillips was simple. After bequests of two rings, she directed that her estate be divided equally among her children. Her two sons were named as executors. The other son so named did not survive her. The will contained a conventional paragraph authorizing, but not requiring, sale of real estate.

The amended first and final administration account

reflects a total estate to be accounted for of $71,247.22. Items passing outside the probate estate brought the total gross estate for federal estate tax purposes to $133,837.69. The principal assets indicated in the administration account were proceeds of sale of real estate, $46,750.00; "chattels and personalty", $15,358.49; and rent receipts, $6,958.60.

Mrs. Phillips died on May 28, 1968. Therefore, under Code (1969 Repl. Vol.) Art. 93, § 12-102 (a) the questions here involved are determined under the law as it existed prior to January 1, 1970. Accordingly, the fact that in our reasoning in this case we make reference to Article 93 as revised by Chapter 3 of the Acts of 1969 should in no wise be regarded as an interpretation of that revised article.

A meeting was held early in June of 1968 at the home of one of the daughters of Mrs. Phillips. The other two daughters were present together with their brother, Goeller, and Kearns, a member of the Baltimore County Bar. As the appellee put it:

"The purpose of the meeting was to discuss the estate and to ascertain how much it might cost in attorney's fees, taxes, etc. There was no discussion as to executor's commissions at this meeting since the Will itself was not present and the identity of the Executor(s) was not known. Mr. Kearns stated that he would accept for his services a fee of an amount equal to two and one-half percent. The details of this fee were cleared up by counsel himself, but were understood by the Appellants to be based on the entire estate or at least that portion in which Mr. Kearns would be directly involved."

Each of the appellants testified that at this meeting their brother, Goeller, said he would waive his commissions. This is denied by Goeller and his attorney, both of whom state that at that time nobody knew the contents of the will.

On March 20, 1969, Kearns wrote a letter to Goeller

with copies to other interested parties. He discussed the authority of the executor to sell real estate, stating:

"Last week I visited the Orphans' Court for Baltimore County to discuss the possible closing of this file. In the course of the discussion it was determined that your Mother's Will makes it mandatory that all of her property be sold before the Estate can be closed. The Court has interpreted your Mother's Will as making this an order or a directive making it mandatory that the Executor sell the properties. During the time that this file has been open I have been operating under the assumption that it was not necessary to sell these properties. However, this was not the Court's ruling after a hearing on the case."

After suggesting a meeting of "all members of the family who [were] involved", he said:

"Because of the more complex problems involved in accounting for the proceeds from the properties, rents, expenditures, etc., both with the State of Maryland and the Federal return, it is my suggestion that we contact an accountant to set up and verify the figures for the returns. As you know, I had quoted you a figure for the Attorney's fee of 25% of the Executor's allowed fee or half of that which is usually charged. This did not take into account the federal tax return since I had no idea at that time that one would be necessary. If the necessity for an accountant arises it will still be more economical because of the lesser fee I have agreed to take. At any rate, these are matters we can discuss at the proposed meeting."

No accountant was hired. The real estate was sold at private sale to one of the appellants without the assistance of a broker.

On July 28, 1969, Goeller filed a first and final administration account which made no mention of an attor-

ney's fee. Apparently distribution was not made after the filing of that account, although it purported to show distribution. It reflected an estate of $70,743.46. An attempt was made in it to claim executor's commissions of 10% of that amount. Commissions allowed were $4,029.73. An amended first and final administration account was filed on May 11, 1970, setting forth an estate of $71,247.22. There the commissions were set at $4,049.88.[1] This works out to 10% on the first $20,000.00 and 4% on the remaining $51,247.22. No claim was made for an attorney's fee, although there was shown an item to Kearns in the amount of $3,272.50 labeled "Brokers Commission on real property sale."[2] This brought exceptions by appellants to the allowance for commissions. The exceptions were based on their contention that "the said accountant had previously agreed with [the appellants] to waive his commissions except as to the extent necessary to pay the tax on commissions and an attorney's fee". They further excepted to the allowance of a broker's commission. An informal hearing was held before the Orphans' Court of Baltimore County. Subsequently, Goeller on October 13, 1970, asked leave to file a petition to pay a counsel fee to Kearns in lieu of broker's commissions. The petition was filed on the same day. It listed 31 separate items which it said Kearns had performed on behalf of the estate, including preparation and filing of answers to exceptions to the amended first and final administration account, appearance on behalf of Goeller at hearing relative to those exceptions, and engaging "in dialogue and correspondence with counsel for the Exceptors to the Amended First and Fi-

---

1. Oddly enough, the federal estate tax return shows $3,022.30 agreed for executor's commissions and $2,345.80 estimated for attorney's fees. The attorney said that this latter figure was composed of two items. The first was an item of $1,007.43 which was said to be a percentage of the executor's commissions. He did not recall the source of the second item of $1,338.37. "It was merely a percentage that we felt the federal government would accept as a stipulated figure."

2. Kearns conceded that this was but an attempt in another way to obtain compensation for him.

nal Administration Account in an attempt to resolve the conflict between the beneficiaries of [the] Estate." A fair summary, however, of what is set forth in the petition is that Kearns prepared all papers on behalf of the executor in the Orphans' Court; prepared and filed the estate tax return; prepared a 1968 income tax return; prepared and filed 1968 and 1969 fiduciary income tax returns; dunned certain tenants for rent payments; instituted suit against tenants on two occasions in the People's Court of Baltimore County; and performed the routine duties which might otherwise have been performed by the executor, such as corresponding with creditors of the decedent, opening of estate bank account, corresponding with various persons in search for additional estate assets, collecting rent, keeping records on sums collected, and corresponding with potential purchasers of the real estate.

The petition of Kearns for a fee bore the certificate of two members of the bar that they had read and considered the petition and were of the opinion that a fee of $3,250 was fair and reasonable for the services set forth. One of those individuals testified that Kearns told him he had worked "in excess of two hundred hours, between two hundred and three hundred hours" in connection with the estate. He also stated that he was not told by Kearns that the executor was claiming full commissions, nor was he told that the real estate was sold to a member of the family.

The Orphans' Court sustained a part of the exceptions to the administration account by disallowing the claim for broker's commissions and directing that in making distribution of the residue of the estate allowance be made for the specific bequests provided in the will. The order on the exceptions fixed Goeller's commissions at 10% on the first $20,000 and 2% on the balance of the estate. It then directed that from the commissions he pay the sum of $628.86 to Mary Riddleberger, one of the appellants, for her services to the estate in managing the real property from the time of the decedent's death to

the time of the sale. The sum allowed was 10% of the rentals collected during that period. The court overruled the exceptions to the counsel fee and confirmed a fee of $3,250 to Kearns for his services as counsel for the executor.

It came out in the course of the testimony before the Orphans' Court that Goeller hypothecated estate funds in the amount of $7,179.34 for the purpose of a personal loan. The sum ultimately distributable to him in the estate (aside from any compensation to him as executor) was substantially in excess of this sum.

(i)

Appellants argue that Goeller waived his right to commissions. In *Mott v. Fowler*, 85 Md. 676, 678, 37 A. 717 (1897), it was held that where there was sufficient consideration an agreement to perform the duties of administrator without compensation was valid and binding. In *Ohlendorf v. Kanne*, 66 Md. 495, 499, 8 A. 351 (1887), an agreement in which one joint executor renounced his right to letters testamentary in favor of his co-executor in consideration of being paid one-half the commissions was likewise held valid and binding, there being sufficient consideration to support the contract. In this instance we are concerned not with an individual who might or might not be appointed as administrator, but with an individual already named as executor in the will. We are not concerned with a contract between co-executors, but are concerned with the compensation of the named executor. No mention of any monetary consideration for the alleged agreement of Goeller has been made. The only possible consideration for any waiver of commissions on the part of Goeller would seem to have been love and affection. Love and affection is not sufficient consideration for an executory contract. *Williams v. Robinson*, 183 Md. 117, 121, 36 A. 2d 547 (1944), and *Dugan v. Gittings*, 3 Gill. 138, 156, 43 Am. Dec. 306 (1845).

The appellants urge that another reason for denying

commissions to Goeller is his hypothecation of estate funds. We are not to be understood as approving in any way the conduct of Goeller in this regard. There was no petition presented for his removal, however, and the sum hypothecated was less than Goeller's individual share of the estate ultimately to be distributed to him. Therefore, we are unable to accept this hypothecation as a sufficient basis for denial of commissions to him. *Cf. State, Use of Gable v. Cheston,* 51 Md. 352, 382 (1879).

In *Newton v. Johnson,* 173 Md. 166, 195 A. 312 (1937), Judge Mitchell said for the Court:

> "[I]t has been uniformly held that it is not within our province to control, or review on appeal, commissions that have been fixed by orphans' courts within the limitations prescribed by law." (citing authorities) *Id.* at 169.

In *Wilson v. Wilson,* 3 G. & J. 20 (1830), Chief Judge Buchanan put the proposition slightly differently for our predecessors when he said:

> "The various circumstances determining the amount of the commission proper to be allowed, cannot appear to this Court, and every case must be governed by its own peculiar circumstances, subject only to the restrictions already mentioned." *Id.* at 23.

The "restrictions" to which reference was made were the limitations imposed by law.

Maximum commissions allowable on the personal estate under Code (1964 Repl. Vol.) Art. 93, § 6 were 10% on the first $20,000 and 4% on the excess. Under § 316 the executor would be entitled to a maximum commission of 10% on the sale price of the real estate. See the comment in *Sykes, Probate Law and Practice* (1956) § 481 to the effect that this latter figure is "without limitation as to the amount of the proceeds."

In this instance the commissions allowed were within

the limitations imposed by law. Accordingly, we will not disturb the order of the orphans' court.

### (ii)

Judge Sykes in § 481 of his work comments:

> "At common law a fiduciary office was regarded as honorary and gratuitous, and executors and administrators were supposed to serve without compensation. As an inducement to private persons, without sacrifice of their private interests to accept the office, statutes allowing commissions have been enacted since colonial times."

Some of the same considerations undoubtedly have led to the changing pattern relative to compensation for counsel.

The statutory provisions concerning counsel fees as applied to the Phillips estate are found in Code (1964 Repl. Vol.) Art. 93, §§ 6 and 10. Sec. 6 relative to administration accounts provides authority for charging "reasonable fees for legal services rendered upon any matter in connection with the administration or distribution of the estate in respect to which the court may believe legal services proper * * *." Sec. 10 provides:

> "For legal services rendered by an attorney at law to an estate *or to an executor or administrator of an estate,* the orphans' court may on his own petition allow such attorney such sums as it may deem reasonable as an expense in the administration account of the executor * * * during whose encumbency such services were rendered."

The italicized language was added by Chapter 291 of the Acts of 1959. Sec. 10 was brought into the law by Chapter 441 of the Acts of 1937.

The changes in our society and the changes in statutory provisions relative to attorney's fees *may be traced*

through the pronouncements of our predecessors in *Mudge v. Mudge,* 155 Md. 1, 141 A. 396 (1928) ; *Gradman v. Brown,* 183 Md. 634, 39 A. 2d 808 (1944) ; *American etc. Comm. v. Eisenberg,* 194 Md. 193, 70 A. 2d 40 (1949) ; *Colley v. Britton,* 210 Md. 237, 123 A. 2d 296 (1956) ; and *Dessell v. Goldman, Jr.,* 231 Md. 428, 190 A. 2d 633 (1963), followed by the report of the Governor's Commission to Review and Revise the Testamentary Law of Maryland in 1968 and the complete revision of Article 93 by the enactment of Chapter 3 of the Acts of 1969.

In *Mudge* our predecessors declined to allow payment from the estate of an attorney's fee incurred on behalf of a legatee in the circuit court for construction of the will of the decedent. Judge Pattison there said for the Court relative to counsel fees generally :

> "The orphans' court has only a special and limited jurisdiction and can exercise no authority not expressly given to it by law. Section 271 of article 93 of the Code; *Townshend v. Brooke,* 9 Gill. 90; *Bowie v. Ghiselin,* 30 Md. 553; *Norment v. Brydon,* 44 Md. 116; *Browne v. Preston,* 38 Md. 373; *Taylor v. Bruscup,* 27 Md. 225; *Dalrymple v. Gamble,* 68 Md. 156. It can only direct the allowance of counsel fees out of an estate in cases where the statute authorized such an allowance. The statute does not in express terms authorize the allowance of counsel fees, but it (Code, art. 93, sec. 5) provides for an allowance 'for costs and extraordinary expenses (not personal) which the court may think proper to allow, laid out in the recovery or security of any part of the estate.' It is under this general provision that counsel fees have, in a number of cases, been allowed out of estates. *Miller's Equity Proc.,* 671; *Glass v. Ramsey,* 9 Gill. 456; *Ex parte Young,* 8 Gill. 285; and other cases." *Id.* at 3.

After reviewing prior cases and the statutory law he said:

> "To be allowable, the services of the attorney, for whom a fee is asked, should, in some way, be beneficial to the estate, either by the enlargement or the protection of it, and not where the only question to be decided is to whom the estate, or any part of it, shall go, and in what proportions." (citing authorities) *Id.* at 4.

In *Gradman* compensation from the estate was sought for counsel for infants who successfully litigated in this Court exceptions to an administration account. Judge Grason pointed to the enactment of what is now § 10 and said that the General Assembly must have thought that act in the form passed did not authorize payment for fees paid to attorneys for advice given by them in the course of the administration or distribution of an estate because it passed Chapter 511 of the Acts of 1939 which did authorize allowance of a fee "to an attorney 'for legal services' rendered 'to an estate.' " He then went on to say:

> "The word estate means, in the testamentary law, such property that passes, upon death, to the personal representative of the decedent. A legatee, or distributee, is a party entitled to take the whole or a part of an estate." *Id.* at 640.

Compensation in that case was denied on the ground that the services were not rendered to the estate and neither added to nor protected the estate.

In *American etc. Comm.* the Court cut a $10,000 counsel fee to $4,000, saying at page 202 of 194 Md., "that if the executor should wish to pay his attorney more than this amount, he should make any such additional payment out of his personal funds." Judge Delaplaine there reviewed the prior authorities and the various

changes in statutory enactments. In *Colley* the Court declined to allow a fee for an attorney, pointing out that the services rendered to the estate were purely those of an executor. In *Dessell* exception was taken in this Court to a fee allowed the attorney for the executor in the amount of $1100. Judge (now Chief Judge) Hammond in the opinion in which the fee was cut to $600 said for the Court:

> "The applicable principles and standards are plain and simple. The Orphans' Court may allow a reasonable fee payable from the estate for legal services rendered in any matter connected with the administration or distribution of the estate. In deciding the proper fee the court must exercise sound judgment and discretion, basing its determination upon the evidence offered for its instruction and guidance and a consideration of the tests held generally applicable in fixing the size of a fee; and from a breach of discretion on its part, an appeal will lie to this Court. *American Jewish Joint Distribution Committee v. Eisenberg,* 194 Md. 193.
>
> "The Eisenberg case adopted as standards for judging a proper fee those suggested in Canon 12 of the Canons of Professional Ethics of the American Bar Association which were adopted by the Maryland State Bar Association and the Bar Association of Baltimore City. Of these several are particularly applicable and pertinent here: (1) the time and labor involved, the novelty and difficulty of the questions involved, and the skill requisite properly to conduct the cause; (2) the customary charges of the Bar for similar services; and (3) the amount involved in the controversy and the benefits resulting to the client from the services." *Id.* at 431.

In Code (1969 Repl. Vol.) Art. 93, § 7-602 as enacted by Chapter 3 of the Acts of 1969 applicable to estates

of persons dying on or after January 1, 1970, provision is made that in the allowance of counsel fees the courts shall take into consideration "what would be a fair and reasonable total charge for the cost of administering the estate under this article, and it shall not allow aggregate compensation in excess of that figure." In the comment relative to this section at page 119 of the second report of the Governor's Commission to Review and Revise the Testamentary Law of Maryland the Commission said:

> "The Commission has noted the confusion which has arisen on account of the varied allowances for attorneys' fees by the different Orphans' Courts throughout the State which, in turn, have given substance to the considerable, and perhaps justifiable, criticism by members of the public. Likewise, it has noted that there appears to be a difference of opinion among lawyers as to the proper separation of the responsibilities and duties performed in the administration of an estate between legal and nonlegal acts.

> "Moreover, the Commission is fully cognizant of the substantial publicity which has been given to claims that the cost of administration of decedents' estates has been exorbitant in many cases. In the opinion of the Commission such publicity has been directed to many features in the administration of decedents' estates which fortunately have not been practiced to any great extent in Maryland, but it will attempt in its Third Report to eliminate the admitted inequities and opportunities for excessive charges which do presently exist."

In yesteryear estates perhaps were less complicated. The vast majority did not involve such things as federal estate tax returns. In some areas certain individuals who were not members of the bar often served as ad-

ministrators or executors. Such persons may well have had a certain expertise in such things as preparation of an administration account. In an era when everything was smaller, registers of wills were more likely to be personally acquainted with personal representatives. Even if not personally acquainted with a personal representative, a register as a matter of good public relations—or politics—often assisted an unknowing individual in an uncomplicated estate in the matter of appointment of appraisers, preparation of an inventory, preparation of an information report, and preparation of an administration account.[3] Time marched on. Such activity came to be frowned upon. See, for instance, 42 *Opinions of the Attorney General* 338 interpreting what is now Code (1968 Repl. Vol.) Art. 10, § 30 as clearly indicating the intent of the General Assembly that preparation by registers of "any paper, form, instrument or document" for filing in the office of a register in an estate constitutes the practice of law and, therefore, is not permitted under Art. 10, § 28.

We interpret the changes made by the General Assembly in statutory provisions relative to counsel fees as intending that counsel be paid from estates for the preparation of routine estate papers and for counseling personal representatives in addition to the prior authorization of compensation for extraordinary work, such as preparation of federal estate tax returns or the conduct of litigation, but we do not interpret those changes as in any way indicating an intent that counsel should be paid from estates for the routine work of executors or administrators, such as opening bank accounts, procuring appraisals, and corresponding with creditors. If any doubt previously existed on that subject, the recent revision of Art. 93 makes plain the intent of the General Assembly that estates should not in effect pay twice for the cost of administration by first paying a commission

---

3. Kearns stated at argument of this case that he was aided substantially in the preparation of the federal estate tax return by personnel of the register of wills' office.

58

to a personal representative and then paying a fee to an attorney for this routine work. To so compensate an attorney would permit an executor or administrator to be paid for doing nothing, paid in effect for the honor of serving as personal representative. That would, indeed, be quite a change from the original common law concept.

Goeller points to the minimum schedule of fees adopted by the Maryland State Bar Association. In so doing he confuses the difference between the fee which may be allowable from an estate with the total compensation which may well be due counsel for his services rendered, since the allowance of a fee in an estate in no way precludes counsel from charging a fee to the personal representative.

We have carefully considered the duties performed by the attorney as counsel for the executor for which he is entitled to reimbursement from the estate, such as preparation of various papers in the orphans' court, preparation of estate tax return, preparation of fiduciary income tax returns, preparation of income tax return, and two small cases against tenants. We have considered all of the criteria established in the prior decisions of this Court for determination of an attorney's fee. We conclude that a fee of $500 to the attorney would be a proper one. Accordingly, the orphans' court erred in allowing $3250. It will adjust the fee.

The laborer is worthy of his hire. By this opinion we are not to be understood as in any way setting the total compensation to which the attorney may be entitled. He should be compensated by Goeller individually for the many duties of the executor which he has performed on Goeller's behalf. That is a matter between him and the executor. It is not a part of this proceeding.

*Affirmed in part and reversed in part; case remanded for further proceedings, the costs to be paid by Frederick S. Goeller, individually.*